**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BONNIE MARCUS, ROMAN WYPART, | : | |
| ERNEST SENDEROV, and | : | |
| MARY ELLEN CALLAGHAN, | : | |
| | : | |
| Plaintiffs | : | **CIVIL ACTION NO.:  07-02075** |
| | : | |
| v. | : | |
| | : | |
| PQ CORPORATION | : | |
| | : | |
| Defendant | : | |

## ORDER

AND NOW this _____ day of _____, 2008, upon consideration of Plaintiffs'

Motion to Compel, it is hereby ORDERED that Plaintiffs' Motion is GRANTED.  Defendant PQ

shall produce documents and information as set forth in Plaintiffs' motion, so that they are

received by Plaintiffs' counsel no later than the close of business one week from the date of this

order.


_____
Hon. John P. Fullam
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BONNIE MARCUS, ROMAN WYPART,    :
ERNEST SENDEROV, and              :
MARY ELLEN CALLAGHAN,        :
                                  :
       Plaintiffs           :     **CIVIL ACTION NO.:  07-02075**
                                  :
       v.                   :
                                  :
PQ CORPORATION             :
                                  :
       Defendant          :

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND
RESPONSES TO INTERROGATORIES**

      NOW COMES Plaintiffs Bonnie Marcus, Roman Wypart, Mary Ellen Callaghan and

Ernest Senderov ("Plaintiffs"), by and through counsel, and hereby moves to compel answers to

Interrogatories and Responses to Plaintiffs' First Request for Production of Documents, as set

forth in the attached memorandum.  For the reasons set forth in the attached memorandum,

Plaintiffs respectfully request that this Motion be granted, and that this Court enter an Order

requiring Defendant PQ to provide full and complete responses as specified herein no later than

the close of business, a week from the date of the Court's order.

                                       Respectfully submitted,

                                       /s/ Katie R. Eyer          
                                       Katie R. Eyer - ID. 200756
                                       Scott B. Goldshaw - ID. 85492
                                       Michael J. Salmanson - ID. 46707
                                       SALMANSON GOLDSHAW, P.C.
                                       Two Penn Center
                                       1500 J.F.K. Blvd., Suite 1230
                                       Philadelphia, PA  19102
                                       215-640-0593

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BONNIE MARCUS, ROMAN WYPART, :
ERNEST SENDEROV, and :
MARY ELLEN CALLAGHAN, :
 :
   Plaintiffs :  **CIVIL ACTION NO.:  07-02075**
 :
  v. :
 :
PQ CORPORATION :
 :
   Defendant :

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**
**PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES**

   Plaintiffs Bonnie Marcus, Roman Wypart, Ernest Senderov and Mary Ellen Callaghan

(hereinafter "Plaintiffs") served their First Set of Discovery Requests on Defendant PQ

Corporation (hereinafter "Defendant or "PQ") on **November 14, 2007**.  For 9 months, Plaintiffs

have been endeavoring to work cooperatively with Defendant to obtain appropriate responses to

these requests.  Despite these extensive good faith efforts, Defendant has continued to refuse to

provide adequate responses to numerous requests relating to critical, central issues in this case.

   Equally problematic, Defendant has also failed – for 9 months – to even provide clear

answers to Plaintiffs' questions as to what documents and information are being withheld.

Finally, Defendant continues to state that it is "considering" whether to provide certain

information, or that it is "searching" for documents requested in Plaintiffs' original production,

nine months after such discovery requests were served.  The time has long passed for Defendant

to comply in full with Plaintiffs' proper discovery requests.  For all of these reasons, Plaintiffs

file the instant motion to compel.

## I.    BACKGROUND

The instant employment discrimination lawsuit was filed by Plaintiffs Bonnie Marcus, Roman Wypart, Ernest Senderov and Mary Ellen Callaghan to challenge their termination from Defendant PQ Corp. as part of a reduction in force ("RIF").  Plaintiffs contend that their termination was based on their age, and not the articulated non-discriminatory justifications provided by Defendant.  Plaintiffs intend to prove age discrimination in this case through a variety of means, including: 1) direct evidence[1]; 2) statistical proof[2]; 3) proof of a prima facie case; and 4) compelling proof of pretext.

All parties to the instant litigation acknowledge that this is an unusually complicated case.  In May of 2005, PQ Corporation underwent a reduction in force ("RIF").  As part of this reduction in force, approximately 50 people were terminated, including 8 individuals – all age 55 or over – in the business unit of which the Plaintiffs were a part (Research and Development or "R&D").  At least seven decision-makers were involved directly in the decision to terminate Plaintiffs' employment, and numerous others were involved in other decisions which Defendant contends were causally related to the termination of Plaintiffs' employment.  Following the RIF, Plaintiffs believe that approximately 15 younger employees took over parts of their jobs.  Thus, this is on its face, an unusually complex case, involving an unusually large number of critical witnesses and documents.

---

1.     One of those decision-makers in this case – John Lau – directly stated to Ms. Marcus prior to the RIF that the management team involved in the restructuring was planning to generally target its older employees for layoff.

2.     *See* note 4, *infra*.

Moreover, the explanations offered by the Defendant for the scientist Plaintiffs'
termination themselves render the instant case substantially more complex than the average
employment discrimination case.[3]  Defendant initially claimed before the EEOC that the scientist
Plaintiffs (Marcus, Senderov and Wypart) were terminated because of the elimination of what
PQ refers to as the "Corporate Development Group" ("CDP").  *See* Attachment 12 (PQ EEOC
Position Statements for Plaintiffs Marcus, Wypart and Senderov).  PQ further claimed that only
two lower-level members of the CDP were transferred to new positions, and that "the entire CDP
was eliminated."  *Id.*  PQ subsequently put forth the more nuanced claim, in responses to the
scientist Plaintiffs' interrogatories, that the scientist Plaintiffs were terminated as a combined
result of the elimination of CDP funding, and the lack of interest in other parts of the company in
providing replacement funding for the research projects that Plaintiffs were performing.  *See*
Attachment 2 (Defendant's Supplemental Responses to Plaintiff Bonnie Marcus' First Set of
Interrogatories), #1; Attachment 3 (Defendant's Supplemental Responses to Plaintiff Roman
Wypart's First Set of Interrogatories), #1; Attachment 4 (Defendant's Supplemental Responses to
Plaintiff Ernest Senderov's First Set of Interrogatories), #1.

Thus, proving pretext in this case requires the Plaintiffs to gather detailed data about
issues such as:

1)      The proportion of Plaintiffs' work that was actually funded through the CDP;

2)      The proportion of other employees' work (including non-RIF'd employees) that

        was funded through the CDP;

----

3.      A separate reason was proffered by PQ for the termination of the one non-scientist
        Plaintiff, Mary Ellen Callaghan, which further adds to the complexity of the case as a
        whole.

3)     The identity and nature of the research projects that were ongoing at the time of the RIF, the funding sources of those projects, and the personnel who were assigned to them;

4)     The nature of the research projects that were continued after the RIF, and whether those projects replicated – in name or in substance – research that was funded through the CDP prior to the RIF, or research that was being performed by the Plaintiffs or other older RIF'd employees prior to the RIF.

This necessity for detailed, complex and precise information is further increased by the existence of striking statistical disparaties in the rates of termination of older and younger workers in the 2005 RIF, and the need of Plaintiffs to perform a more nuanced statistical analysis to verify and further elaborate these initial findings.[4]

In recognition of the complexity of the litigation, both parties agreed to request an extended discovery period, and in March 2008 jointly moved the Court to extend the discovery period (which had already been ongoing for roughly half a year) through December 2008.  As of that time, all parties had served and provided written responses to extensive initial discovery requests, and were beginning to consult regarding to deficiencies' in each side's responses.  In view of the sheer number of issues to be addressed, the parties agreed to meet directly (in lieu of correspondence), and in fact met for approximately 5-6 hours over two days in late March and early April to discuss their respective concerns.  In accordance with the parties' agreement,

---

4.     A basic analysis shows that if PQ had selected eight employees in R&D at random for layoff, the statistical probability that all eight selected would be at least 55 years old is less than one in 58,000.  Plaintiffs intend to present a more sophisticated analysis from a statistical expert, which requires the gathering of detailed data.

neither party memorialized the many concerns that had been discussed in the meetings in subsequent correspondence at that time.

Following the parties' meetings, Plaintiffs worked diligently to address the discovery concerns raised by Defendant verbally during the meeting, communicating frequently with Defendant's counsel by phone and email to resolve the various concerns with Plaintiffs' production that Defendant had raised.  Plaintiffs also forwarded to Defendant two letters addressing discrete issues that the parties had agreed at the meetings should be the subject of further correspondence.

In contrast, Defendant did not take steps in the months following the meetings to further discuss with Plaintiffs the concerns with Defendant's discovery that had been raised during the meetings.

In mid-May, Plaintiffs' counsel requested that the parties set a final deadline for their supplementation responses of May 23, 2008, a date that was changed to May 27, 2008 at Defense counsel's request.  Defense counsel subsequently requested an extension until June 5, 2008, which Plaintiffs' counsel agreed to, in anticipation that a good-faith effort was being made to respond to Plaintiffs' concerns.

On June 5, 2008, Defendant provided responses by correspondence to only the very limited issues that Plaintiffs had addressed by letter following the parties' meetings.  *See* Attachment 8 (PQ Letter dated 6/5/08).[5]  Defendant did not address any of the numerous issues

---

5.      Defendant also on June 5, 2008, provided responses and documents for Plaintiffs' Second Set of Interrogatories, and Second and Third Set of Document Requests, which the parties have not yet discussed informally.  These discovery requests therefore have not been addressed by Plaintiffs in this motion, despite the fact that they request additional critical areas of information.  Plaintiffs have also omitted from this motion additional deficiencies in Defendant's responses to Plaintiffs' first set of discovery requests that they

that had been verbally discussed by the parties at the parties' meetings, as to which it had been agreed that no further correspondence was necessary.[6] *Id.* Plaintiffs' counsel subsequently called this highly substantial omission to the attention of defense counsel. It was only after numerous verbal conversations and written communications between counsel that Defense counsel again agreed to respond in full to the many issues raised by the Plaintiffs at the parties' March and April meetings. Plaintiffs did not actually receive full responses until July 31, 2008, approximately four months after the parties' meetings.

As set forth below, the responses provided by Defendant in late July continue to have numerous material deficiencies. Moreover, Defendant's responses continue to refuse to even provide clear answers to Plaintiffs' questions as to what documents and information are being withheld from Defendant's production. Finally, certain of Defendant's responses continue to state that it is "considering" whether to provide certain information, or that it is "searching" for documents requested in Plaintiffs' original production, nine months after such discovery requests were initially served. These defects in Defendant's responses relate to critical areas of discovery in this case, and Plaintiffs respectfully request that Defendant be ordered at this time to comply with its discovery obligations.

One final observation is in order, before proceeding to address the particular areas of discovery that Plaintiffs are seeking in this motion. All parties to this litigation have produced

---

are hopeful may be mooted by the production of the information requested in this motion, or that may not prove necessary to pursue for other reasons.

6. Both of the letters to which Defendant responded in its June 5, 2008 correspondence specifically reminded Defendant that "[t]his correspondence does not address the issues that were addressed verbally at our meetings," in keeping with the parties' agreement that no subsequent correspondence on those issues was necessary. *See* Attachment 10 (Plaintiffs' Letter dated 4/10/08); Attachment 9 (Plaintiffs' Letter dated 5/6/08).

voluminous documentation and information in connection with this case.[7]  Nevertheless, the fact remains that <u>Plaintiffs do not have the information that they need to be able to effectively address the reasons that Defendant has provided for the Plaintiffs' termination.</u>  Defendant – not Plaintiffs – has articulated reasons for Plaintiffs' termination that involve complicated and voluminous information and documents.  Defendant – not Plaintiffs – has within its possession the detailed and complicated information and documents that are necessary to confirm or disprove Defendant's articulated reasons.  Allowing Plaintiffs equal access to this critical information is precisely the purpose of civil discovery.  This purpose should not be frustrated by the sheer volume of documents – be they relevant or irrelevant – that Defendant has produced to date.

## II.    ARGUMENT

There are five principal areas in which Plaintiffs are seeking to compel the production of information and documents: 1) Defendant's "Legitimate Non-Discriminatory" Reasons for the Termination of Plaintiffs; 2) Information Relating to the RIF and the RIF Decision-Makers; 3) Information Relating to the Plaintiffs and To Other PQ Employees; 4) General Issues; and 5) Materials Defendant Has Committed to Producing.  Each of these areas are addressed *seriatim* below.

---

7.    Plaintiffs note, however, that Defendant's production has included a significant number of duplicates of the same documents.

A.   **Defendant's "Legitimate, Non-Discriminatory" Reasons for the Termination of Plaintiffs**
*(Document Request #38, Marcus Interrogatories #8, 13 and 14, Wypart Interrogatories #10 and 13, and Senderov Interrogatories #8 and 14)*

As discussed, *supra*, Defendant has articulated two different, but in some ways similar, justifications for the termination of scientist Plaintiffs in this case.  Plaintiffs believe, based on information available to them, and the discovery provided by Defendant to date, that there are numerous serious discrepancies in Defendant's articulated justifications, including the following:

1)   While PQ initially claimed that all members of the CDP except a technologist and a technician were eliminated, several <u>younger</u> scientists who were working on CDP projects were not in fact terminated[8];

2)   While Defendant initially claimed that the CDP was entirely eliminated, research previously funded through the CDP was continued – in substance, if not in name – after the RIF[9];

3)   While PQ currently claims that the scientist Plaintiffs were terminated because their projects were Corporate Development ("CD") funded (and CD funding was eliminated), Plaintiffs in fact worked – in some cases extensively – on matters that were not funded through the CDP;

---

8.   Defendant's precise statement to the EEOC was as follows: "...Once PQ was sold, the decision was made to eliminate the CDP completely, and Lau had to determine what to do with the people it supported.... The only people in the CDP who were transferred were a technologist and a technician.... The forgoing demonstrates that PQ was not seeking to eliminate its older employees.  Rather it was looking for ways to reduce costs and eliminate positions that were not critical to future operations.  In that regard, the entire CDP was eliminated." *See* Attachment 12 (PQ EEOC Position Statements for Plaintiffs Marcus, Wypart and Senderov).

9.   This fact would be consistent with the explanation provided by PQ in response to Plaintiffs' interrogatories, but not with the explanation provided to the EEOC.

4)     While PQ claims that Plaintiffs were terminated because funding for their projects

was eliminated, Plaintiffs' job responsibilities (both project-based and non-project

based) were largely assumed by younger employees following the RIF; and

5)     While PQ claims that Plaintiffs were terminated because their research was

eliminated (entirely or virtually entirely), research that Plaintiffs and other RIF'd

employees performed was continued – in substance, if not in name – after the RIF.

These matters obviously constitute critical flaws in Defendant's alleged non-

discriminatory reasons for why Plaintiffs were terminated.  Nevertheless, Defendant have refused

to provide Plaintiffs with the information they would need to fully prove (or disprove) these, and

other, deficiencies in Defendant's justifications.[10]  Considering the forgoing, Plaintiffs request

that the Court order Defendant to provide the following documents and/or information:

Marcus Interrogatory #13:

*Please **identify** all persons assigned to the **Corporate Development Group**
(whether on a full time, part time, intermittent or temporary basis) since
January 1, 2002, and specify for each individual the proportion of their time
dedicated to the **Corporate Development Group**, and the dates during which they
were a part of the Group.*[11]

This Interrogatory requests basic, essential information directly relating to the

Defendant's articulated explanations for scientist Plaintiffs' termination.  Defendant has

---

10.    Defendant's refusal to respond in full is particularly damaging to Plaintiffs' ability to
conduct a meaningful statistical analysis in this case.  Defense counsel has already
indicated that she intends to attack the admissibility of Plaintiffs' statistical evidence,
rendering it particularly important that Plaintiffs be provided with the type of
comprehensive detailed information that will allow it to perform a comprehensive
statistical analysis.

11.    Definitions for the terms set forth in bold and the Defendant's amended response to
Plaintiffs' request are set forth in Attachment 2 (Defendant's Supplemental Responses to
Plaintiff Bonnie Marcus' First Set of Interrogatories).

responded by referring Plaintiffs generally to Defendant's document production, and identifying

a number of illustrative documents.  The very documents identified by Defendant, however, as

well as a number of others within Defendant's production, provide **directly contradictory**

**information** about the identity of those assigned to the CDP, and the proportion of time that

those individuals were assigned to the CDP.  *See, e.g.,* Attachment 13 (PQBM 000235-36)

(identifying Plaintiff Marcus as having .7 of her time allocated to the CDP in 2005); Attachment

14 (PQBM 000215) (providing a listing of individuals assigned to the CDP in 2005 which does

not include Ms. Marcus); *see generally* Attachments 13 and 14 (in several other instances listing

different members of the CDP in 2005 or different time allocations for the individual members).

Furthermore, the documents identified by Defendant do not provide comprehensive information

relating to who was assigned to the CDP during the specified time frame, including what non-

Research and Development personnel were assigned to the Group, or the ages and positions of

the assigned members.[12]  Given that the central explanation provided by Defendant to the EEOC

for scientist Plaintiffs' termination was the total elimination of the CDP (excepting two of its

_____

12.    Defendant's initial response to Marcus Interrogatory #13 indicated without limitation that
       "documents identifying persons assigned to the Corporate Development Group are being
       produced in response to Plaintiffs' Document Request."  *See* Attachment 6 (Defendant's
       Responses to Plaintiff Bonnie Marcus' First Set of Interrogatories), #13.  Defendant's
       amended response limited the documents being produced to "persons assigned to the
       Corporate Development Group *from Research and Development*" together with
       "[b]usiness people involved in those projects in 2004." *See* Attachment 2 (Defendant's
       Supplemental Responses to Plaintiff Bonnie Marcus' First Set of Interrogatories), #13.
       Plaintiffs request that Defendant be required to produce full information for ***all*** members
       of the CDP, in accordance with its initial representations.  Plaintiffs also note in this
       respect that both Ms. Marcus and Mr. Wypart performed certain job tasks that overlapped
       or duplicated those performed by non-R&D personnel, and that information relating to
       such non-R&D personnel is therefore highly pertinent.  Finally, since Defendant initially
       contended that all members of the CDP were eliminated, except for two scientific
       employees, the identity of all such members is clearly critical.

- 10 -

members, who were transferred), Plaintiffs are entitled to know Defendant's position on this matter, and to a full, non-conflicting response to this interrogatory.

Wypart Interrogatory #13

> *Please **identify** each person who was worked on any "**Research and Development, Corporate Development or Business Unit Sponsored Project**" funded in whole or in part by Corporate Development Funds (i.e., funds as described in the PQ Corporation Annual Report 2003, page 12) during the year 2005, and specify, with respect to each such person, whether or not they were **terminated** as part of the **2005 Reduction in Force**.*[13]

This interrogatory was intended to complement Marcus Interrogatory #13 by requesting information about individuals who in fact performed work on projects funded by "Corporate Development Funds" during 2005, whether or not those individuals were formally listed as members of the "Corporate Development Group."  Since Defendant has contended that scientist Plaintiffs' employment was terminated because they were working on projects funded by Corporate Development Funds, this information is obviously highly relevant.  Nevertheless, Defendant has refused to provide full information in response to this interrogatory, instead referring Plaintiffs to:

1)     A list of employees that were proposed to be terminated / kept in the 2005 RIF, which is inconsistent with the final list of employees who were actually RIF'd, *see* PQBM 4353-60[14];

---

13.     Definitions for the terms set forth in bold and the Defendant's amended response to Plaintiffs' request are set forth in Attachment 3 (Defendant's Supplemental Responses to Plaintiff Roman Wypart's First Set of Interrogatories).

14.     PQBM 4353-60 has not been attached to this motion as an Attachment, since it has been designated as "Confidential" by the Defendant, and therefore would require filing under seal under the parties' confidentiality agreement.  If the Court believes that this document would assist in the resolution of this Motion, Plaintiffs would be pleased to provide a copy of it under seal.

2)   <u>A document which Defendant did not produce to Plaintiffs</u>, and which Defendant

itself acknowledges was not produced to Plaintiff, *see* Attachment 3 (Defendant's

Supplemental Responses to Plaintiff Roman Wypart's First Set of Interrogatories),

#13 (referring Plaintiffs to PQBM 000217); *see* Attachment 11 (PQ Letter dated

1/22/08) (noting that the bates range 216-217 was omitted from the production);

and

3)   A document which appears to provide partial responsive information, only as to

individuals employed in R&D (but not elsewhere in PQ), *see* Attachment 13

(PQBM 000235-36).

Plaintiffs request that Defendant be compelled to provide Plaintiffs with a straightforward and

full response to this simple, and central Interrogatory request.

<u>Marcus Interrogatory #14</u>

*Please **identify** all persons assigned to the Exploratory Research Group (whether on a full time, part time, intermittent or temporary basis) since January 1, 2002, and specify for each individual the proportion of their time dedicated to the Exploratory Research Group, and the dates during which they were a part of the Group.*[15]

It appears from certain of Defendant's statements that Defendant believes the Exploratory

Research Group to be the same entity as the Corporate Development Group. *See, e.g.,*

Attachment 4 (Defendant's Supplemental Responses to Plaintiff Senderov's First Set of

Interrogatories), #11 (apparently using CDP and Exploratory interchangeably).  For this reason,

Plaintiffs believe this request to be of critical importance.  Defendant's response to this request

---

15.   Definitions for the terms set forth in bold and the Defendant's amended response to Plaintiffs' request are set forth in Attachment 2 (Defendant's Supplemental Responses to Plaintiff Bonnie Marcus' First Set of Interrogatories).

again refers Plaintiffs generally to Defendant's document production, identifying a number of illustrative documents. Again, the documents produced by Defendant include contradictory information, and do not fully respond to the request. *See, e.g.,* Attachment 15 (PQBM 000221-000222) (listing only Wypart, Senderov and Thompson as being members of Exploratory Research Group in 2005); Attachment 16 (PQBM 000246-000258), at 249 (listing Lau, Marcus, Hinchey, Thompson, Senderov, Wypart, Fisher and a Coop Student as being members of the Exploratory Research Group in 2005). Plaintiffs therefore request that Defendant be required to provide a full non-conflicting response to this interrogatory.

Marcus Interrogatory #8

> ***Identify*** *all **Research and Development, Corporate Development or Business Unit Sponsored Projects** at PQ that any employee **terminated** (or laid off) as part of the **2005 Reduction in Force** worked on after January 1, 2004.*[16]

This interrogatory requests detailed information relating to the projects that were worked on by scientist Plaintiffs, as well as others terminated in the 2005 RIF. Specifically, in accordance with the definition of "identify" set forth in Plaintiffs' request, this interrogatory requests that Defendant provide detailed information relating to certain projects, including: 1) the personnel performing work on the project (by dates of involvement and listing date of birth); 2) funding sources for the project (by fiscal year); and 3) the commonly used name of the project at PQ. This request is absolutely critical to Plaintiffs' ability to Sexplore a number of key issues with respect to Defendant's articulated non-discriminatory justifications for their termination, including, for example:

---

16.   Definitions for the terms set forth in bold and the Defendant's amended response to Plaintiffs' request are set forth in Attachment 2 (Defendant's Supplemental Responses to Plaintiff Bonnie Marcus' First Set of Interrogatories).

1)      Whether the projects that Plaintiffs were working on prior to the RIF were continued following the RIF, and if so, how they were funded, and who was assigned;

2)      Whether Plaintiffs were working on projects that were not funded by the CDP at the time of the RIF;

3)      Whether other employees assigned to the same projects as Plaintiffs were not terminated;

4)      Whether the other employees who were terminated as part of the 2005 RIF were or were not employed on CD-funded projects; and

5)      Who were the employees employed on CD-funded projects, and whether any such employees were not terminated as part of the RIF.

Defendant's response omits the overwhelming majority of the critical information requested by this Interrogatory, including: 1) the identity of the individuals who worked on each project; 2) the funding sources for the projects (by fiscal year); and 3) the dates during which work was being performed on the projects.  Indeed, it is impossible to even tell from Defendant's response which specific projects it contends each of the Plaintiffs were working on at the time of the RIF (an issue that is believed to be in dispute).  Defendant's response also fails to provide *any* information at all for the other individuals who were terminated as part of the 2005 Reduction in Force, although it contends that limited information will be provided at some unspecified future date for three of the four other RIF'd individuals.  For all of these reasons, Plaintiffs request that Defendant be required to provide a full response to this Interrogatory, for all of the employees terminated as part of the 2005 RIF.

- 14 -

Senderov Interrogatory #14

> ***Identify*** *all **Research and Development, Corporate Development or Business Unit Sponsored Projects** that the following current or former PQ employees have performed work on at any time since January 1, 2004: Bonnie Marcus, Roman Wypart, Ernest Senderov, Al Behan, Richard Hinchey, John Slobogin, Eleanor Tickner, Phil Connolly, Cindy Connor, Erin Fisher, Yatao Hu, Pam Klipstein, Hong-Xin Li, Ed Mysak, Larissa Ding, Jeffrey Fuess, Rumbo Li, Ufuk Senturk, Kenneth Berg, Bill Breitenbach, MK Lee, Jason Lenox, Neil Miller, Barry Schwartz, and Mark Vincent.*[17]

This request, which overlaps to some extent with Marcus Interrogatory #8, was designed to obtain detailed information about projects worked on by three categories of individuals: 1) members of R&D who were terminated as part of the RIF; 2) younger employees who Plaintiffs believe assumed work from the older RIF'd members of R&D following the RIF; and 3) individuals who, to Plaintiffs' knowledge, performed work on Corporate Development projects.  Defendant refused to provide any written response, instead referring Plaintiffs generally to Defendant's document production, and specifically to a single document, neither of which comes close to providing the detailed information requested by Plaintiffs.  Plaintiffs consider this request to be absolutely critical, for the same reasons set forth in relation to Marcus Interrogatory #8, and therefore requests that Defendant be compelled to provide a full response to this interrogatory.

Document Request #38

> *All documents created or modified on or after May 1, 2005 that **pertain** to or refer to work performed on any of the following **Research and Development, Corporate Development or Business Unit Sponsored Projects**: AG (Silver) Zeolites, Biocide I – Wood Preservation / Borax (Rio Tinto) / Wood Treatment, Biocide II – Wood Preservation / PQ Materials, Biocide Building Materials / PQ*

---

17.   Definitions for the terms set forth in bold and the Defendant's amended response to Plaintiffs' request are set forth in Attachment 4 (Defendant's Supplemental Responses to Plaintiff Ernest Senderov's First Set of Interrogatories).

*Materials, Conditioning, Glass Beads / C & D Dust, Liquid Detergent Additives / Small Particle and Nano-A / Small Crystal A / SPA / Small 4A, Lucite CD / Silica Beads / MMA Catalyst, Nano-A / Nano Composites / Additives / Nano (submicron size) Zeolite A, Next Generation Beads / Specialty Beads / Wide Pore Beads, Olefin Cracking / High Silica / Alumina Ratio Pentasil Zeolites, Polymer Additives / Plastic Additives / Zeolites for Plastics, PVC Additives, Titanium Zeolite for Oxidation Catalysis / TS-PQ / TS-1 / Zeolites With Titanium in The Framework, Titania Silicate / Titanium Catalyst / Titanium Oxidation, Wood Polymer Composites.*[18]

In this document request, Plaintiffs requested documentation showing work performed just prior to the RIF and thereafter on: 1) projects that Plaintiffs performed work on shortly prior to the RIF; and 2) projects that were wholly or partially funded through the CDP.[19]  This documentation is obviously critical as it would enable Plaintiffs to prove objectively, among other things:

1)      To what extent work on the Plaintiffs' projects continued after the RIF (including the nature and extent of such work, and the individuals assigned to perform such work); and

2)      Whether CD projects – including but not limited to CD projects to which Plaintiffs were assigned – continued after the RIF, despite Defendant's initial assertion that the CD program was entirely eliminated.

Despite the obviously critical nature of this documentation, Defendant has refused to respond in full to this request.  Indeed, Defendant has refused to even clearly specify what documents it is

---

18.     Definitions for the terms set forth in bold and the Defendant's amended response to Plaintiffs' request are set forth in Attachment 1 (Defendant's Supplemental Responses to Plaintiffs' First Request for Production of Documents).  *See also* Attachment 8 (PQ Letter dated 6/5/08), #4 for further information relating to Defendant's response.

19.     Plaintiffs note that the designation "Conditioning" was included accidentally in this request, and they are not requesting documents relating to a project titled "Conditioning."

withholding, providing inconsistent information with respect to this issue in its formal responses

and correspondence with the Plaintiffs.  *See* Attachment 8 (PQ Letter dated of 6/5/08),

#4 (indicating, for example, that unspecified parts of the documentation relating to projects that

the Plaintiffs worked on, including Nano-A, MMA Catalyst, and PVC Additives, was being

withheld); Attachment 1 (Defendant's Supplemental Responses to Plaintiffs' First Request for

Production of Documents) (indicating that Defendant would produce <u>all</u> responsive documents

relating to projects worked on by the Plaintiffs).[20]  Since this documentation is obviously critical

to Plaintiffs' ability to independently verify the truth of the explanations proffered by the

Defendant for scientist Plaintiffs' termination, Plaintiffs request that Defendant be ordered to

disclose all responsive documents.

 Plaintiffs also respond to the following specific arguments that have been raised by

Defendant in support of its failure to respond in full to this request, *see* Attachment 8 (PQ Letter

dated 6/5/08), #4 and Attachment 1 (Defendant's Supplemental Responses to Plaintiffs' First

Request for Production of Documents), #38:

  1) The request is vague and unintelligible – As the Defendant is apparently aware,

   *see, e.g.,* Attachment 8 (PQ Letter dated 6/5/08), #4, the use of multiple names for

---

20. Defendant used the language "Without waiving this objection, documents responsive to
this request which Defendant can reasonably identify...will be produced" in numerous
locations throughout its responses, including in response to Document Request #38 (but
qualified, in the case of Document Request #38 to only extend to responsive documents
"relating to projects worked on by Plaintiffs.")  Based on the parties' written and verbal
communications, Plaintiffs understand this language to signify that Defendant has
performed a full, good faith search for responsive documents and has produced those
documents (except as qualified by any limitations specifically set forth in Defendant's
response).  Wherever, in this motion, Plaintiffs represent that Defendant has agreed to
produce all documents within a certain category, or all documents responsive to a specific
request, it is based on Plaintiffs' understanding of this or similar language.

different projects was intended to ensure that relevant documentation is not

omitted.  Many of the projects at PQ go by multiple names, and so it is important

that any listing be comprehensive.  In our lengthy conversations, Defendant has

never articulated any specific concerns as to what projects are intended to be

included within the scope of this request, except as the request pertains to TS-1

(discussed below).

2)      The request includes projects that the Plaintiffs did not work on – As noted,

*supra*, each of the listed projects is either a CD project, or a project that the

Plaintiffs worked on shortly prior to the RIF.  Each category is highly relevant, for

the reasons noted above.[21]

3)      As to projects that were worked on by the Plaintiffs, the request encompasses

"research that was being conducted by other employees prior to the RIF and

continued after the RIF, [and] new work that was developed after the RIF." *See*

Attachment 8 (PQ Letter dated 6/5/08), #4 – As an initial matter, this limitation

was not articulated at any time in Defendant's formal responses (which

consistently indicated that all documentation relating to projects worked on by

Plaintiffs will be produced).  *See* Attachment 1 (Defendant's Supplemental

Responses to Plaintiffs' First Request for Production of Documents).  More

importantly, much of the objected-to documentation is potentially highly relevant.

Most notably, since Defendant has contended that funding for virtually all of the

---

21.     In the event that the Court determines that Defendant will only be required to produce
documents relating to projects worked on by the Plaintiffs, Plaintiffs request that – at a
minimum – Plaintiffs, not Defendant, be permitted to specify what projects fall within
that category, since it appears Defendant takes a narrow view of this issue.

Plaintiffs' projects was eliminated (and that this caused Plaintiffs' termination), *any* continuation of those projects is highly significant.  Moreover, <u>Defendant should not be permitted to determine – as a matter of its own unmonitored discretion – whether work being performed on Plaintiffs' projects following the RIF is sufficiently relevant to be disclosed</u>.  Plaintiffs themselves are best suited to determine whether work being performed after the RIF is work that would have fallen within their purview, had they not been terminated.

4)   TS-1 is not the same project as TS-PQ – Prior to the RIF, Plaintiff Senderov was performing research on a substance known as TS-1, under the project title "TS-PQ."  After the RIF, it is our understanding that similar research continued on TS-1, under the name TS-1.  (This research may have existed in some form prior to the RIF under the name "TS-1," but apparently was substantially increased, to compensate for the termination of the TS-PQ project, after the RIF).  The fact that Defendant chose to continue research on a particular substance under a different name cannot shield it from discovery.

5)   Defendant has already produced numerous documents responsive to this request, including all documents that in its estimation "relat[e] to the plaintiffs' work" – The overwhelming majority of the project-related documents that Defendant has produced are <u>not</u> responsive to this request, which specifically requested only those documents "created or modified on or after May 1, 2005."  Instead, Defendant has flooded Plaintiffs with thousands of pages of irrelevant documentation from years prior to the RIF.  More importantly, Defendant is not entitled to arbitrarily determine what responsive documents will be withheld, on

- 19 -

the grounds that it has already produced some responsive documents, or on the

basis of its own unlimited discretionary determination as to what "relate[s] to the

Plaintiffs' work."

Senderov Interrogatory #8

> *Please describe in detail any **Research and Development, Corporate Development or Business Unit Sponsored Project** involving oxidation catalysis upon which any work has been performed since June 1, 2005.*[22]

This request was designed to obtain information about the nature of the work that has

been performed relating to Titanium Silicalite or Titanium Silicates (most notably TS-1 / TS-PQ)

since the RIF.  As noted above, Plaintiff Senderov was performing research on TS-1 under the

project title "TS-PQ" just prior to the RIF.[23]  Therefore, the research performed after the RIF on

TS-1 and related substances is highly relevant to determining whether Plaintiff Senderov's

research was in fact discontinued, as claimed, or was instead continued by a younger employee,

as we believe.  Nonetheless, Defendant has refused to provide the following basic information

relating to the nature of the work performed in this area following the RIF: 1) who performed the

work, and the dates of performance of the work; 2) when the work was initiated; 3) a description

of the nature of the work; and 4) if PQ contends that work on the project began prior to the RIF, a

detailed description of the work that took place prior to the RIF.  Instead Defendant has, in

correspondence, stated that "[n]o exploratory research is being done in this area," and referred

---

22.    Definitions for the terms set forth in bold and the Defendant's amended response to Plaintiffs' request are set forth in Attachment 4 (Defendant's Supplemental Responses to Plaintiff Ernest Senderov's First Set of Interrogatories).  *See also* Attachment 7 (PQ Letter dated 7/25/08), Senderov Interrogatory #8 for further information relating to Defendant's response.

23.    Plaintiff Senderov was also performing other work in the areas of Titanium Silicalite and Titanium Silicates prior to the RIF.

Plaintiffs to a document.  *See* Attachment 7 (PQ Letter dated 7/25/08), Senderov Interrogatory

#8; *see also* Attachment 4 (Defendant's Supplemental Responses to Plaintiff Ernest Senderov's

First Set of Interrogatories), #8 (indicating only that "Zeolyst International is still performing the

oxidation analysis work, but it is not work that was performed by the plaintiffs or which involves

exploratory research.").  The Titanium Silicalite/Titanium Silicates work being performed by

Plaintiff Senderov prior to the RIF was not exclusively exploratory in nature, and so the

Defendant's remark with respect to the exploratory nature of the research is a non-sequitur.

Moreover, the single document identified has very little bearing on the nature of the responsive

work performed since the RIF, and certainly does not describe that research in detail.  Given the

critical nature of the forgoing information, Plaintiffs respectfully request that Defendant be

ordered to provide a full response to this interrogatory, including the specific categories of

information noted herein.

<u>Wypart Interrogatory #10</u>

***Identify*** *every person that was hired to perform work in* **Research and**
**Development** *and/or at PQ's Valley Forge Headquarters since January 1, 2004.*[24]

Defendant has produced some responsive information in response to this request.

However, it has refused by letter to provide any responsive information relating to consultants.

*See* Attachment 7 (PQ Letter dated 7/25/08), Wypart Interrogatory #10.[25]  Obviously, this is a

---

24.   Definitions for the terms set forth in bold and the Defendant's amended response to
      Plaintiffs' request are set forth in Attachment 3 (Defendant's Supplemental Responses to
      Plaintiff Roman Wypart's First Set of Interrogatories).  *See also* Attachment 7 (PQ Letter
      dated 7/25/08), Wypart Interrogatory #10 for further information relating to Defendant's
      response

25.   Defendant's formal responses include no such limitation.  *See* Attachment 3 (Defendant's
      Supplemental Responses to Plaintiff Roman Wypart's First Set of Interrogatories), #10.

critical omission as consultants can be hired to fill Plaintiffs' job functions just as easily as full-time employees.  (Indeed, in this case Plaintiff Senderov was temporarily hired back after the RIF as a consultant to perform work he had previously performed as a full-time employee).  Plaintiffs therefore respectfully request that this Court order Defendant to provide information relating to consultants in response to this interrogatory request.

### B. Information Relating to the RIF and the RIF Decision-Makers
### (Document Requests #10 and 11, Callaghan Interrogatories #14 and 15, Wypart Interrogatory #15)

Information relating to the RIF and the RIF decision makers is critical to Plaintiffs' ability to assess the Defendant's discriminatory actions in this case.  Without full information pertaining to the RIF and the RIF Decision-makers, Plaintiffs ability to determine the likely scope of discriminatory decision-making in the RIF – both for the purposes of a statistical analysis and in general – is extremely and unfairly circumscribed.  Similarly, Plaintiffs ability to understand the discriminatory action taken against the Plaintiffs' is necessarily circumscribed to the extent that Defendant refuses to provide basic information pertaining to that action.  Therefore, Plaintiffs respectfully request that the Court order Defendant to provide the following documents and/or information:

Callaghan Interrogatory #14

*Please **identify** every person **involved in** PQ's decision to **terminate** the employment of any individual identified in Plaintiff Callaghan's Interrogatory #6 [requesting identification of each individual who "was **terminated** (and/or who was laid off) as part of the **2005 Reduction in Force**"], specifying, with respect to each "involved" person, which individual or individuals they were **involved in** the decision to **terminate**.*[26]

---

26.     Definitions for the terms set forth in bold and the Defendant's amended response to Plaintiffs' request are set forth in Attachment 5 (Defendant's Supplemental Responses to Plaintiff Mary Ellen Callaghan's First Set of Interrogatories).

Plaintiffs consider Callaghan Interrogatory #14 to be one of the most – if not the most – critical requests for information in this case.  The decision-makers for the other employees terminated as part of the RIF will provide Plaintiffs with several areas of critically important information, including:

1)      Whether there is a particularly pronounced age-based trend for particular decision-makers;

2)      Whether the same decision-makers who decided to terminate Plaintiffs' employment were involved in other RIF decisions; and

3)      The extent to which terminations that occurred elsewhere in the company are directly related to the terminations at issue in this case.

All of these are obviously critical areas of information.[27]  Plaintiffs therefore respectfully request that the Court order Defendant to respond in full to this interrogatory, for *all* employees terminated (or laid off) as part of the 2005 Reduction in Force.[28]

---

27.   For example, despite the fact that it appears that Defendant has improperly withheld information relating to PQ's Valley Forge facility at various, unspecified locations in its discovery, Plaintiffs have not yet made a formal motion on this issue, pending receipt of the information requested in Callaghan Interrogatory #14.  A number of other pending disputes between the parties have also not been raised in this motion, as they may be unnecessary depending on the information that is received in response to this motion.

28.   As of this date, Defendant has only provided responsive information for the Plaintiffs, although it has asserted that it has provided, or intends to provide, slightly broader information.  *See* Attachment 5 (Defendant's Supplemental Responses to Plaintiff Mary Ellen Callaghan's First Set of Interrogatories), #14; Attachment 7 (PQ Letter dated 7/25/08), Callaghan Interrogatory #14.  Plaintiffs respectfully request that Defendant be ordered to provide responsive information for all RIF'd employees, in view of the critical nature of the information.

Wypart Interrogatory #15

**Identify** every person employed in **Research and Development** and/or at PQ's Valley Forge Headquarters whose position was eliminated as part of the **2005 Reduction in Force**.[29]

Two critical pieces of information, among others, are necessary to understand the nature of the Reduction in Force in this case: 1) what employees were terminated; and 2) what positions were eliminated. The second piece of information is of critical importance because: 1) it is possible that people (including Plaintiffs) were terminated whose positions were not eliminated; and 2) it is also possible (and indeed Plaintiffs believe it to be the case) that not all holders of eliminated positions were terminated (and that some were, instead, offered the opportunity to continue employment in a new position). If younger employees were consistently offered the opportunity to continue in new positions, while older employees were not, this is critical information. Similarly, if older employees were terminated despite the fact that their positions were not eliminated, this is also critical information. Defendant has nonetheless refused to provide a full response to this simple request, instead referring Plaintiffs to: 1) a document that identifies only what employees were *terminated* as part of the RIF, without specifying whether their position was eliminated, PQBM 4289-94[30]; and 2) a document that appears to show certain position and title changes, but does not purport to provide information as to whether any

29. Definitions for the terms set forth in bold and the Defendant's amended response to Plaintiffs' request are set forth in Attachment 3 (Defendant's Supplemental Responses to Plaintiff Roman Wypart's First Set of Interrogatories).

30. PQBM 4289-94 has not been attached to this motion as an Attachment, since it has been designated as "Confidential" by the Defendant, and therefore would require filing under seal under the parties' confidentiality agreement. If the Court believes that this document would assist in the resolution of this Motion, Plaintiffs would be pleased to provide a copy of it under seal.

positions were eliminated as part of the RIF, *see* Attachment 17 (PQBM 11258-60).  Plaintiffs

therefore respectfully request that Defendant be compelled to provide a full response to this

interrogatory.

Callaghan Interrogatory #15

> *Please **identify** each person who assumed any part of the job responsibilities of any person identified in Plaintiff Callaghan's Interrogatory #6 [requesting the identification of all employees terminated and/or laid off as part of the RIF] at any time following the **2005 Reduction in Force**, specifying, with respect to each person who assumed job responsibilities, the individual or individuals whose responsibilities were assumed and the nature of the responsibilities assumed.*[31]

In meetings between the parties, Plaintiffs proposed as a compromise measure that

Defendant provide the above information for only the eight employees terminated from PQ R&D

(all of whom were age 55 or older).  Defendant subsequently agreed in its Amended Responses

to provide full information for 7 of the 8 employees, but in fact only provided information for the

Plaintiffs (in connection with other, overlapping, interrogatory responses).  *See* Attachment 5

(Defendant's Supplemental Responses to Plaintiff Mary Ellen Callaghan's First Set of

Interrogatories), #15.  Moreover, Defendant objected to providing information for one of the 8

R&D employees (Eleanor Tickner), despite the fact that she was 64 years of age at the time of the

RIF.  *Id.*

Plaintiffs therefore respectfully request that the Court compel Defendant to provide full

information for all 4 of the R&D employees for which it has not yet provided information.  As an

initial matter, Defendant has already agreed to provide information for 3 of these 4 employees,

and has simply failed to do so.  In addition, the four non-Plaintiff employees who were

---

31.     Definitions for the terms set forth in bold and the Defendant's amended response to Plaintiffs' request are set forth in Attachment 5 (Defendant's Supplemental Responses to Plaintiff Mary Ellen Callaghan's First Set of Interrogatories).

terminated as part of the RIF ranged in age from 63, at the youngest, to 67, at the oldest.

Therefore, it is obviously relevant whether all or part of *any* of these non-Plaintiff employees' job

responsibilities were assumed by others following the RIF, as it may be indicative of a pattern of

reassigning work to younger workers as part of the RIF.

    Document Request #10

> *All documents **pertaining to** any discipline, negative performance evaluation, warning, or other reprimand (whether formal or informal, written or oral) received by John Lau, Joe Caruso, Stan Silverman, Colleen Delmonte, Michael Imbriani, Rosalyn Kutchins, Kevin Doran, James Bailey, Neil Miller, Bill Cormier, Bob Patterson or any employee identified in response to Plaintiff Marcus's Interrogatory #3 [requesting identification of decision-makers involved in Marcus's termination], Plaintiff Wypart's Interrogatory #3 [requesting identification of decision-makers involved in Wypart's termination], Plaintiff Callaghan's Interrogatory #3 [requesting identification of decision-makers involved in Callaghan's termination] or Plaintiff Senderov's Interrogatory #3 [requesting identification of decision-makers involved in Senderov's termination].*[32]

    This document request requests all documents relating to employee discipline or warnings

for each of the decision-makers in this case.  Defendant has been unwilling to provide the vast

majority of this documentation, instead simply asserting: 1) that there are no responsive

documents for three of the listed employees, *see* Attachment 1 (Defendant's Supplemental

Responses to Plaintiffs' First Request for Production of Documents), #10; and 2) for the

remainder of employees, that Defendant has reviewed "the personnel files," and has not located

any discipline or negative evaluations relating to EEO matters, *see* Attachment 7 (PQ Letter

dated 7/25/08), Document Request #10.  Plaintiffs note, as an initial matter, that EEO-related

---

32.    Definitions for the terms set forth in bold and the Defendant's amended response to Plaintiffs' request are set forth in Attachment 1 (Defendant's Supplemental Responses to Plaintiffs' First Request for Production of Documents).  *See also* Attachment 7 (PQ Letter dated 7/25/08), Document Request #10 for further information relating to Defendant's response.

- 26 -

discipline, warnings or other reprimands may well be located in separate files from the decision-makers' personnel files (such as separately maintained EEO files).  Moreover, other forms of discipline, negative performance evaluations, warnings or other reprimands are also likely to be of relevance to this case.  For example, if a decision-maker was disciplined or reprimanded in relation to their interactions with another employee – known by Plaintiffs to be an older employee – that discipline would be relevant whether or not it is characterized as an EEO matter. Therefore, Plaintiffs request that Defendant be required to respond in full to this request.

Document Request #11

***Personnel files*** *for the following individuals: Kenneth Berg, Phil Connolly, Cindy Connor, John Farrer, Erin Fisher, Yatao Hu, Pam Klipstein, Hong-Xin Li, Ed Mysak, Jeffrey Fuess, Ufuk Senturk, MK Lee, Jason Lenox, Neil Miller, Mark Vincent, John Lau, Joe Caruso, Stan Silverman, Colleen Delmonte, Michael Imbriani, Roslyn Kutchins, Kevin Doran, James Bailey, Neil Miller, Bill Cormier, Bob Patterson, and any individual identified in response to Plaintiff Marcus's Interrogatory #3, Plaintiff Wypart's Interrogatory #3, Plaintiff Callaghan's Interrogatory #3, Plaintiff Senderov's Interrogatory #3, Plaintiff Marcus's Interrogatory #5, Plaintiff Wypart's Interrogatory #5, Plaintiff Callaghan's Interrogatory #5 or Plaintiff Senderov's Interrogatory #5.* [33]

Defendant also has refused to produce personnel files for most of the decision-makers in this case, including: John Lau, Joe Caruso, Stan Silverman, Colleen Delmonte, Michael Imbriani, Roslyn Kutchins, Kevin Doran and Michael Boyce. [34]  Plaintiffs believe these documents to clearly fall within the scope of proper discovery in this case, as they are clearly reasonably

---

33.  Definitions for the terms set forth in bold and the Defendant's amended response to Plaintiffs' request are set forth in Attachment 1 (Defendant's Supplemental Responses to Plaintiffs' First Request for Production of Documents).  *See also* Attachment 7 (PQ Letter dated 7/25/08), Document Request #11 for further information relating to Defendant's response.

34.  Defendant has produced a number of personnel files responsive to this request, but has refused to produce personnel files for the specified decision-makers.  *See* Attachment 7 (PQ Letter dated 7/25/08), Document Request #10.

calculated to lead to the discovery of admissible evidence.  Indeed, the decision-makers'

personnel file may contain a wide variety of potentially relevant information, including:

1) discipline for EEO and non-EEO matters; 2) the positions held by the decision-makers at PQ;

3) their employment background; 4) their performance evaluations; and 5) prior negative

interactions they may have had with older employees.  Plaintiffs therefore request that Defendant

be ordered to produce personnel files for all decision-makers in this case, including John Lau, Joe

Caruso, Stan Silverman, Colleen Delmonte, Michael Imbriani, Roslyn Kutchins, Kevin Doran

and Michael Boyce.

### C.   Information Relating to the Plaintiffs and To Other PQ Employees   *(Document Request #30, Callaghan Interrogatory #8, Wypart Interrogatory #9)*

Document Request 30

*All emails to, from, **pertaining to** or referencing any of the Plaintiffs (directly or indirectly) since June 1, 2004.*[35]

Defendant's initial response to this request indicated that – aside from privilege or work

product objections – it would respond in full.[36]  At the meeting of the parties, it became apparent

that Defendant had not, in fact responded in full to this request.  Plaintiffs, as an accommodation

---

35.   Definitions for the terms set forth in bold and the Defendant's amended response to
      Plaintiffs' request are set forth in Attachment 1 (Defendant's Supplemental Responses to
      Plaintiffs' First Request for Production of Documents).  *See also* Attachment 8 (PQ Letter
      dated 6/5/08), #3 for further information relating to Defendant's response.

36.   Indeed, Defendant's <u>amended</u> response continues to state that it will respond in full,
      despite Defendant's contrary assertion in correspondence.  *Compare* Attachment 1
      (Defendant's Supplemental Responses to Plaintiffs' First Request for Production of
      Documents), #30 (stating that Defendant will respond in full); *with* Attachment 8 (PQ
      Letter dated 6/5/08), #3 (indicating that Defendant was producing some unspecified
      additional number of "additional documents and e-mails relating to the plaintiffs," but
      rejecting Plaintiffs' proposed compromise).

to the Defendant, agreed to propose a narrowed version of this request, and on April 10, 2008

proposed the following:

> That Defendant produce all emails to, from, pertaining to or referencing any of the
> Plaintiffs (directly or indirectly) since January 1, 2005, that were sent or received
> by any of the following individuals: Michael Boyce, Joe Caruso, Bill Cormier,
> Colleen Delmonte, Kevin Doran, Michael Imbriani, Rosalyn Kutchins, John Lau,
> Neil Miller, Ed Myzak, Bob Patterson, Stan Silverman, James Bailey, and any
> employee identified in response to Plaintiff Marcus's Interrogatory #3 [requesting
> identification of decision-makers involved in Marcus's termination], Plaintiff
> Wypart's Interrogatory #3 [requesting identification of decision-makers involved
> in Wypart's termination], Plaintiff Callaghan's Interrogatory #3 [requesting
> identification of decision-makers involved in Callaghan's termination] and/or
> Plaintiff Senderov's Interrogatory #3 [requesting identification of decision-makers
> involved in Senderov's termination].

*See* Attachment 10 (Plaintiffs' Letter dated 4/10/08).

Thus, Plaintiffs substantially limited this request, both in time (to five months prior to the

RIF, forward) and in scope (to only possible decision-makers in this case).  Despite the fact that

Plaintiffs' narrowed request is clearly reasonably calculated to lead to the discovery of admissible

evidence, and would not impose any substantial burden on the Defendant (since it could be

effectuated through a simple email search of the specified individuals' emails), Defendant

refused to agree to this compromise position, and proposed no alternate compromise, *see*

Attachment 8 (PQ Letter dated 6/5/08), #3.  Plaintiffs therefore request that the Court order

Defendant to produce responsive documents in accordance with the compromise proposal set

forth above.

<u>Callaghan Interrogatory #8 and Wypart Interrogatory #9</u>

*Callaghan 8.* ***Identify*** *every person employed in* ***Research and Development***
*and/or at PQ's Valley Forge Headquarters whose job title*

- 29 -

> *changed or who was reassigned to a new **Business Unit** as part of the **2005 Reduction in Force**.*[37]

Wypart 9.    ***Identify*** *every person employed in **Research and Development** and/or at PQ's Valley Forge Headquarters who was transferred to a new **Business Unit** or whose job title has changed since January 1, 2003.*[38]

The information requested in Callaghan Interrogatory #8 and Wypart Interrogatory #9 is critical for a number of reasons, including:

1)    To the extent that younger individuals were reassigned to new organizational units and/or positions in lieu of termination during the 2005 RIF, while older employees were denied this opportunity, this is obviously pertinent information;

2)    Organizational unit changes and position changes made as part of the RIF may suggest that portions of Plaintiffs and/or other RIF'd employees' work and/or positions were assumed by others following the RIF; and

3)    Formal organizational unit changes to Plaintiffs own positions, of which Plaintiffs are unaware, may have occurred shortly prior to the RIF, and are obviously pertinent to Plaintiffs' case.

---

37.    Definitions for the terms set forth in bold and the Defendant's amended response to Plaintiffs' request are set forth in Attachment 5 (Defendant's Supplemental Responses to Plaintiff Mary Ellen Callaghan's First Set of Interrogatories).

38.    Definitions for the terms set forth in bold and the Defendant's amended response to Plaintiffs' request are set forth in Attachment 3 (Defendant's Supplemental Responses to Plaintiff Roman Wypart's First Set of Interrogatories).

Defendant has produced a document that appears to be significantly responsive to both of the above requests. *See* Attachment 17 (PQBM 11258-11260).[39]  However, Defendant has failed – despite Plaintiffs' express request – to provide a list of organizational unit codes, which are necessary in order for Plaintiffs to be able to determine the meaning of the organizational unit changes listed on the chart. *See* Attachment 9 (Plaintiffs' Letter dated 5/6/08), Marcus Interrogatory #10 (requesting a list of organizational unit codes); Attachment 8 (PQ Letter dated 6/5/08), #9 (indicating that defendant was producing a chart with <u>cost center information</u>, which does not include any information about organizational unit codes).  Moreover, Defendant has again – despite Plaintiffs' express request – refused to designate which of the listed changes were made *as part of the 2005 RIF*, leaving Plaintiffs to speculate based on date as to which such changes were a part of the RIF. *See* Attachment 7 (PQ Letter dated 7/25/08), Callaghan Interrogatory #8.  Plaintiffs therefore request that Defendant be compelled to produce this additional critical information.

  **D.**  **General Issues**

*Redactions*

  Throughout its document production, Defendant has repeatedly redacted information from otherwise responsive documents. *See, e.g.,* Attachment 18 (PQBM 11257), Attachment 19 (PQBM 7183-7192).  At the parties' meetings and in subsequent correspondence, Defendant indicated that some documents were redacted for privilege, but that others were redacted because the Defendant believed the redacted information was not reasonably calculated to lead to the

---

39. Defendant's Amended response to Callaghan Interrogatory #8 also references PQBM 5426-29, which is an earlier, less comprehensive version of the same document produced as PQBM 11258-11260

discovery of admissible evidence.  *See, e.g.,* Attachment 7 (PQ Letter dated 7/25/08), Section I.B.

Of those documents redacted because Defendant felt that the redacted information was not

reasonably calculated to lead to the discovery of admissible evidence, Defendant has produced

unredacted copies of some – but not all – of the initially redacted documents.  Defendant has not

identified what documents (or even what categories of documents) it is continuing to refuse to

produce in unredacted form, or provided any further explanation for the continued redaction of

those documents.  *See* Attachment 7 (PQ Letter dated 7/25/08), Section I.B.

As Plaintiffs have conveyed to Defendant, Plaintiffs do not believe that Defendant's

opinion of the relevance (or "reasonably calculated" nature) of portions of an otherwise

discoverable document is a legitimate basis for a redaction.  In every litigated case, numerous

parts of documents falling within the scope of a reasonable discovery request (including indeed

the whole document in some instances) have information that the producing party may deem

"irrelevant" to the matter under litigation.  (Indeed, Plaintiffs in this litigation have produced

hundreds of unredacted pages of documents that they believe were not reasonably calculated to

lead to the discovery of admissible evidence in any way).  Nonetheless, that information may

well possess substantial significance to the receiving party, who may have a different perspective

on the meaningfulness of certain information than that of opposing counsel.  Defense counsel

should not be permitted to pick and choose – without any articulated guidelines – what portions

of otherwise responsive documents it deems of potential relevance to this case.

Indeed, an examination of the documents that Defendant <u>has</u> produced in unredacted form

(after initially producing a redacted version) makes clear that Defendant's subjective judgment of

what is irrelevant to this case is incredibly overbroad and inappropriate.  By way of example

only, Defendant initially redacted the following comment from a produced email, apparently on

the grounds of relevancy: "Meeting to review Restructuring with B. Sichko [PQ's top HR official], MRB [Michael R. Boyce, PQ's CEO]".  *See* Attachment 20 (PQBM 10548); *see also* Attachment 21 (PQBM 007218) (redacted version of PQBM 10548).  It is difficult to imagine how Defendant could believe that a meeting <u>on the topic of the Reduction in Force</u>, that involved PQ's top HR official (Sichko) and the CEO of the company (MRB, or Michael R. Boyce) is somehow irrelevant to this litigation.

Plaintiffs therefore respectfully request that Defendant be ordered to produce unredacted copies of all redacted documents that have been produced to date, with the exception of those documents that were redacted solely for privilege (or that have already been produced in unredacted form), and that Defendant be ordered on a forgoing basis to cease redacting documents for reasons other than privilege.

*Archived Documents*

Given that the relevant actions in this case occurred several years ago, and based on subsequent conversations with opposing counsel, it is Plaintiffs' understanding that many relevant documents may exist, if at all, only in Defendant's archives.  Nevertheless, Plaintiffs have been unable to obtain a clear, consistent response from Defendant as to whether or not archived documents have in fact been searched for responsive documents.  Defendant initially represented that they had not been searched, and then later denied making such a statement, while at the same time failing to clearly articulate whether they have, in fact, been searched.  *See* Attachment 7 (PQ Letter dated 7/25/08), Section I.A. ("I do not recall stating that we did not review archived documents.  In fact, we have gone through many computers searching for documents and e-mails.  We have produced additional e-mails and documents today.").  *Cf.* Attachment 8 (PQ Letter dated 6/5/08), #11 (under the heading "Archived Documents and E-

Mail") ("We are still checking on what documents may still exist on back-up tapes.  We should have this for you soon.").  Plaintiffs therefore request that this Court order Defendant to conduct a search of all archives for the relevant time period (as specified in Plaintiffs' discovery requests) or, if Defendant contends that such a search was already conducted, describe the nature of the search, and to ensure that all future productions include archived documents.

### Potters Industries and Zeolyst International Materials

Scientific projects and employees frequently move between PQ, its wholly owned subsidiary, Potters Industries ("Potters"), and its joint venture, Zeolyst International ("ZI").  Indeed, in this very case, two of the scientist Plaintiffs were partially or wholly assigned to ZI at various times[40], and Potters and ZI were among the entities who had the option to continue to fund Plaintiffs' research following the RIF.  For these reasons, among others, Plaintiffs' discovery requests included Potters and ZI in their definition of "You," "your," "Defendant," "PQ," so as to ensure that all responses were fully comprehensive as to those entities.  In its discovery responses, Defendant propounded a very few, isolated objections to producing materials from Potters and ZI in response to specific requests.  Defendant did not propound any generally applicable objection to producing such materials, and did not otherwise make clear that such materials had been withheld.

Nevertheless, at the parties' meeting, it became clear that Defendant had frequently withheld information from Potters and ZI, without formally stating that they were doing so.  Plaintiffs therefore requested that Defendant produce all such materials and, at a bare minimum,

---

40.     It is Plaintiffs' understanding that the overwhelming majority of R&D work performed for ZI was performed by employees that were technically PQ employees, but that were on assignment to ZI.

clearly identify in response to each specific question whether or not they were producing or

withholding such materials.  Defendant's response was as follows:

> "...We have also produced substantial documentation regarding
> funding and manpower matrices for research and development
> ("R&D") for Potters and Zeolyst International ("ZI")...<u>We are
> unwilling to go back through our responses and say exactly what
> documents were not produced.</u>  We think we have made more than
> a good faith effort to address the major issues you raised.  If there
> is particular document or type of document or information you
> think is missing...let us know."

*See* Attachment 7 (PQ Letter dated 7/25/08), Section I.C. (emphasis added).

Defendant has, at this time, had 9 months to propound a generally applicable objection to

the production of materials relating to Potters and Zeolyst International.  Having failed to do so,

despite Plaintiffs' express invitation to make clear the nature of its objection, any such objection

is clearly waived.  Moreover, to the very limited extend that Defendant has actually objected to

the production of such materials (in response to a very few specific requests), its objection should

be overruled, as materials relating to both ZI and Potters are highly relevant to this litigation, for

the reasons set forth above.  Therefore, Plaintiffs request that Defendant be ordered to produce all

responsive documents and information pertaining to Potters and Zeolyst International in

connection with its responses to Plaintiffs' First Set of Discovery Requests and all other

discovery requests in this action.

### E.    Materials Defendant Has Committed to Producing

As noted above in the context of several specific requests, Defendant has agreed to

produce a variety of discovery materials that have yet to be produced.  Given that 9 months have

past since Plaintiffs propounded their First Set of Discovery Requests, Plaintiffs request that

Defendant be ordered to produce these materials (and any other materials they have committed to providing[41]) forthwith, within a week from the date of the Court's order.

## III.    CONCLUSION

For all of the forgoing reasons, Plaintiffs respectfully request that Defendant be ordered to produce documents and information as requested herein.

Respectfully submitted,

/s/ Katie R. Eyer
Katie R. Eyer - ID. 200756
Scott B. Goldshaw - I.D. 85492
Michael J. Salmanson - I.D.  46707
SALMANSON GOLDSHAW, P.C.
Two Penn Center
1500 J.F.K. Blvd., Suite 1230
Philadelphia, PA  19102
215-640-0593
215-640-0596 (fax)

Date: August 18, 2008

---

41.    By way of illustration, Plaintiffs request that Defendant be required to produce forthwith the video it has identified in response to Plaintiffs' Document Requests #48-51, *see* Attachment 7 (PQ Letter dated 7/25/08), Document Requests #48, 49, 50 and 51, and to provide an amended Interrogatory Response reflecting its prior correspondence relating to Senderov Interrogatory #13, *see* Attachment 7 (PQ Letter dated 7/25/08), Senderov Interrogatory #13 (indicating that PQ's original response had included an error) and Attachment 4 (Defendant's Supplemental Responses to Plaintiff Ernest Senderov's First Set of Interrogatories), #13 (failing to revise Senderov's Interrogatory #13 to reflect the error identified in Defendant's letter).

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BONNIE MARCUS, ROMAN WYPART,   : | |
| ERNEST SENDEROV, and   : | |
| MARY ELLEN CALLAGHAN,   : | |
|   : | |
|       Plaintiffs   : | **CIVIL ACTION NO.:  07-02075** |
|   : | |
|     v.   : | |
|   : | |
| PQ CORPORATION   : | |
|   : | |
|       Defendant   : | |

## 26.1(F) CERTIFICATION

Pursuant to Rule 26.1(f), I, Katie R. Eyer, hereby certify that Plaintiffs' counsel has made good faith attempts to resolve the disputes set forth in this motion, as follows:

1.      On March 27, 2008, the parties met for approximately 3 hours to discuss their respective discovery concerns.  The parties again met on April 2, 2008 for approximately 2-3 hours to continue discussing their respective discovery concerns.  During these two meetings, it was agreed that – in view of the extensive nature of the issues raised – the parties would respond, without the need for further correspondence.

2.      During the following two months, Plaintiffs sent two subsequent letters, further delineating the nature of their concerns as to certain requests that the parties had agreed in the meetings should be the subject of further discussion.

3.      On May 15, 2008, Plaintiffs' counsel requested that the parties agree to a mutual deadline of May 23, 2008 for their respective supplementation responses.  As per the request of Defense counsel, this date was changed to May 27, 2008, and was later extended further to June 5, 2008.

4.      On June 5, 2008, Defendant provided responses by correspondence to <u>only</u> the very limited issues that Plaintiffs had addressed by letter following the parties' meetings. Defendant did not address any of the numerous issues that had been verbally discussed by the parties at the parties' meetings, as to which it had been agreed that no further correspondence was necessary.

5.      Plaintiffs' counsel subsequently called this highly substantial omission to the attention of defense counsel.  It was only after numerous verbal conversations and written communications between counsel that Defense counsel again agreed to respond in full to the many issues raised by the Plaintiffs at the parties' March and April meetings.

6.      On July 31, 2008, approximately four months after the parties' meetings, Plaintiffs finally received the last installment of Defendant's responses to Plaintiffs' supplementation requests.

7.      For the reasons set forth in the instant motion, many of these responses continued to be inadequate.

8.      Defendant has now had 9 months to provide proper responses to Plaintiffs' First Set of Discovery Requests, and should not be permitted to further delay providing full responses, as requested herein.

9.      I certify that the foregoing statements made by me are true to the best of my knowledge, information and belief.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

BY:   <u>  /s/ Katie R. Eyer              </u>
            Katie R. Eyer - ID. 200756

Dated:   August 18, 2008

- 38 -

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BONNIE MARCUS, ROMAN WYPART, | : | |
| ERNEST SENDEROV, and | : | |
| MARY ELLEN CALLAGHAN, | : | |
| | : | |
| Plaintiffs | : | **CIVIL ACTION NO.:  07-02075** |
| | : | |
| v. | : | |
| | : | |
| PQ CORPORATION | : | |
| | : | |
| Defendant | : | |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 18, 2008, I caused a true and correct copy of the foregoing Motion to Compel to be filed, without attachments, via the Official Court Electronic Document Filing System, and that said Motion is therefore available for viewing and downloading from the ECF system.  By virtue of this filing, service of the Motion upon the following counsel, being Electronic Case Filing Users, is complete upon counsels' receipt of the Court's e-mail notification of the Notice of Electronic Filing:

Elizabeth A. Malloy

The following counsel was also served on August 18, 2008 with a copy of this Motion, including all attachments:

*via hand delivery to:*  Elizabeth A. Malloy
Buchanan Ingersoll & Rooney, PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103-2985

*via Federal Express:*  Peter Ennis, Esquire
Buchanan Ingersoll & Rooney
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA  15219-1410

BY:    /s/ Katie R. Eyer
Katie R. Eyer - ID. 200756