## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BONNIE MARCUS, ROMAN WYPART, ERNEST SENDEROV, and MARY ELLEN CALLAGHAN, | : <br> : <br> : <br> : |
| Plaintiffs, | :    **CIVIL ACTION NO.: 07-02075** <br> : |
| v. | :    **Hon. John P. Fullum** <br> : |
| PQ CORPORATION, | : <br> : |
| Defendant. | : |

### DEFENDANT PQ CORPORATION'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

Defendant PQ Corporation ("Defendant" or "PQ"), by its counsel, files this Response to

Plaintiffs' Motion to Compel Production of Documents and Responses to Interrogatories

("Motion to Compel").

### INTRODUCTION

The four plaintiffs in this case were employed in PQ's research and development ("R &

D") facility located in Conshohocken, Pennsylvania. They were terminated as part of a reduction

in force implemented by PQ in May 2005 ("RIF"). In justifying their Motion to Compel,

plaintiffs assert this is an "unusually" complicated case. (Motion to Compel p. 2) While PQ has

certainly produced substantial documentation and information, in essence, the question presented

is the same as any discrimination case involving an RIF: were the plaintiffs allegedly chosen to

be included in the RIF because of their age.

During the pendency of this litigation, plaintiffs have served on Defendant four sets of

documents requests, containing 111 separate document requests, and nine sets of interrogatories

containing 80 separate interrogatories (not including subparts). Many of the document requests

and interrogatories ask for overlapping information, are confusing and ask for detailed

information on virtually <u>any and all</u> research and development work conducted by PQ since

2004, regardless of whether that work had <u>anything</u> to do with the work that plaintiffs were

performing at the time they were terminated by PQ.

Despite the foregoing, PQ has produced over 11,900 pages of documents (although some

of these are duplicates).  It has also attempted on numerous occasions to work with plaintiffs'

counsel to provide information and documents which are relevant to this lawsuit, or reasonably

calculated to lead to the discovery of admissible evidence.

Plaintiffs' Motion to Compel relies on gross inaccuracies over what this case is about,

what is relevant, and what has happened to date relating to discovery.  Further, plaintiffs have

failed to inform the Court of substantial documentation which Defendant has produced which

provides much of the information being sought in the Motion to Compel.

The only information or documentation which PQ has refused to produce is either wholly

irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and/or is

unduly burdensome.  Therefore, the Motion to Compel must be denied.

## I.    BACKGROUND FACTS

PQ is a manufacturer of chemicals including silicates, zeolites and other performance

materials serving various industries.  During the relevant time period, PQ had two business units:

the Industrial Chemicals Division ("Industrial Chemicals") and Potters Industries ("Potters"),

which produces engineered glass materials.  PQ is also part of a joint venture, along with an

affiliate of Royal Dutch Shell Group, in Zeolyst International ("ZI"), which produces zeolite

powders, catalysts and other absorbents.   For purposes of this response, ZI will be referred to as

a PQ business unit.

In addition to the business units, PQ had what is known as a "holding company." This is not a separate legal entity. Rather, it was financial arrangement used by PQ to allocate funding, among other things.

PQ was purchased in February 2005. The new management team initiated the organizational review which led to the RIF.

Up to 2005, PQ's R & D facility worked on projects directly for the business units, as well as longer range projects that were not connected directly to any business unit. These are sometimes referred to as "corporate development projects" or "exploratory research." One of the documents produced by PQ during discovery at PQBM 10842-44 is a document dated 10/4/04 setting forth the proposed head count for R & D in 2005. *See* Attachment 1. It shows over 55 people in 10 different R & D departments. PQ also produced numerous documents showing that the level of skills and duties performed by individuals in R & D varied greatly. For example, it produced at PQBM 656 an organization chart from January 2004 showing many of the same people, along with their titles (*see* Attachment 2). In addition, at Bates Stamp PQBM 96 and 97, it produced career matrices for all of the research jobs at the Conshohocken facility. *See* Attachment 3. The latter documents show that minimum job requirements range from a high school degree for a laboratory assistant, to having a Ph.D and 15 years experience for a principal scientist.

The foregoing documents demonstrate that it is clearly irrelevant and inappropriate to compare, for example, the work performed by a research fellow, the positions held by plaintiffs Eric Senderov ("Senderov") and Roman Wypart ("Wypart"), who are required to have a BS and 15-20 years of experience, or a Ph.D. and 8 years of experience, with the work performed by

research technician, like Eleanor Tickner, a person referenced in the Motion to Compel, who is only required to have an Associates Degree and 3-5 years experience.

The foregoing documents also indicate that there were many different employees in different departments who were working on entirely different projects than Senderov, Wypart and Bonnie Marcus ("Marcus"). In fact, the plaintiffs' own circumstances demonstrate this point: Senderov and Wypart worked on entirely different projects at the time of their termination, while Mary Ellen Callaghan ("Callaghan") was an office supervisor who did no research whatsoever.

In reviewing the Motion to Compel, it is also important to understand that, prior to the 2005 RIF, PQ funded research and development in two basic ways. First, the three business units financed research related to their business and/or had a certain percentage of their funding allocated to R & D. Second, the President, through the holding company, directly allotted money to fund "corporate development projects." These were the longer term projects that were not expected to generate income for any of the business units for several years. Funding from the President, through the holding company for these corporate development projects, was ended by the new management as part of the organizational review process.

The final background fact necessary to analyze the Motion to Compel is PQ's stated reason for terminating the plaintiffs' employment. This reason becomes the basis for proving pretext in an employment discrimination case. The plaintiffs may wish to make many arguments, but if they do not relate to PQ's stated reasons, than plaintiffs' arguments, and the information needed to raise them, are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. *Kautz v. Met-Pro Corp*, 412 F. 3d 463, 469 n. 2 (3d Cir. 2005)("we are obliged to consider whether the employer's proffered reasons are pretextual and not alternative theories advanced by the plaintiff"), *citing, inter alia, Ezold v. Wolf, Block, Schorr*

4

*and Solis-Cohen*, 983 F. 2d 509, 523-25 (3d Cir. 1993); *Simpson v. Kay Jewelers*, 142 F. 3d 639, 642 (1998).

Two of the plaintiffs, Senderov and Wypart, at the time of their termination were working on projects funded by the President through the holding company. At the time of their termination, they were working on corporate development projects that had been funded by the holding company. Marcus was employed in a managerial capacity over "detergent zeolites" and the Exploratory Research Group, which Group was entirely funded by corporate development money from the holding company. As noted above, Callaghan was the office supervisor for the R & D facility. While plaintiffs have tried to parse words to make it seem like PQ has changed its reasons for termination (Motion to Compel p. 3), that is simply not true. Senderov, Wypart and Marcus were terminated because funding supporting the work they were performing on corporate development projects at the time of their termination was eliminated. Callaghan was terminated because PQ eliminated the office supervisor position at Conshohocken.

Thus, the issue in this case in terms of pretext (Motion to Compel p. 3-4) is whether, contrary to what PQ has articulated, the funding for the work that Senderov, Wypart and Marcus were performing at the time of their termination was continued. For Callaghan, the question is whether her position was, in fact, eliminated. To the extent that other PQ employees may have continued to work on some research or development projects which they previously performed, or which were developed after the RIF, is simply irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

## II.    ARGUMENT

While pages 2 through 9 of the Motion to Compel contain many misstatements of the record and Defendant's position, Defendant will focus on responding to the specific discovery

requests at issue. Because plaintiffs have failed to set forth verbatim Defendant's objections, as required by Local Rule 26.1(b), they will be set forth herein.

**A.    Marcus Interrogatory No. 13 - Motion to Compel p. 9**

> Please **identify** all persons assigned to the **Corporate Development Group** (whether on a full time, part time, intermittent or temporary basis) since January 1, 2002, and specify for each individual the proportion of their time dedicated to the **Corporate Development Group**, and the dates during which they were a part of the Group.

> **RESPONSE:** Defendant objects to this Interrogatory on the grounds that the information requested is overly broad, burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objection, documents identifying persons assigned to the Corporate Development Group from Research and Development are being produced in response to Plaintiffs' Document Request. See, e.g., PQBM 212-215, 233-36. Business people involved in these projects in 2004 are listed in PQBM 15.

There was no corporate development group after the 2005 RIF. Therefore, the only time period covered by the interrogatory when people would have been assigned to corporate development projects is 2002-2005. Rather than try to recreate from memory who might have been assigned to these projects, PQ went to the original source and produced the documents it relied upon at that time. This give the plaintiffs exactly what they requested. *See* Attachment 4. Plaintiffs argue that one document shows Marcus as having .7 of her time assigned to CDP, while another document omits her for 2005. There is nothing inconsistent with those facts. The charts show that, contrary to the plaintiffs' allegations in this case, as early as the fall of 2004, the previous management had decided to eliminate Marcus' position.

The bottom line is that the best evidence of who was assigned to corporate development are the documents prepared at that time. They are clearly better than requiring PQ to go back and figure out from memory whether it might be able to provide a more detailed explanation of what happened three to five years ago. That is not required under Fed. R. Civ. P. 33(d) because

PQ would be relying upon the documents it has produced to plaintiff to provide any more information.

Next, plaintiffs claim that PQ has not identified "non-Research and Development personnel assigned to the Group." Motion to Compel p. 10. No non-Research and Development personnel were "assigned" to the Group. Counsel for PQ clearly made a mistake when it attempted to be helpful in its response to plaintiffs by noting a document which referenced business people who were involved in certain projects. Counsel will no longer provide such additional information.

Finally, plaintiffs complain that PQ has not provided the ages or positions of the assigned members. Motion to Compel p. 10. This assertion is so astounding that it is difficult to understand how it could be made in good faith. Defendant has not only provided the personnel files of <u>all</u> the people listed, but it has also produced, at Bates Nos. PQBM 4352-61 and 11567-76, spreadsheets showing the ages, dates of birth, positions, years of service, salary, ethnic origin and gender of everyone employed in 2005 and everyone hired since 2004. In fact, at the request of plaintiffs' counsel, and without a legal obligation to do so, PQ supplied many of the spreadsheets in electronic form so that plaintiffs could more easily conduct their statistical analysis! *See* Attachment 5. Plaintiffs now have the audacity to say PQ has not provided the information. Because PQ provided all that is required by Fed. R. Civ. P. 33(d), plaintiffs' Motion to Compel a further response to Marcus Interrogatory No. 13, must be denied.

**B.      Wypart Interrogatory No. 13 - Motion to Compel p. 11**

Please **identify** each person who was worked on any **"Research and Development, Corporate Development or Business Unit Sponsored Project"** funded in whole or in part by Corporate Development Funds (i.e., funds as described in the PQ Corporation Annual Report 2003, page 12) during the year 2005, and specify, with respect to each such person, whether or not they were **terminated** as part of the **2005 Reduction in Force.**

> **RESPONSE:** Defendant objects to this Interrogatory on the grounds that the
> information requested is overly broad, burdensome, irrelevant and not reasonably
> calculated to lead to the discovery of admissible evidence. Without waiving that
> objection, see document being produced at Bates-Stamp PQBM 4353-60, 217,
> 235-36. The people listed on PQBM 217 and 235-36 who were terminated were
> the plaintiffs and Dick Hinchey.

Plaintiffs raise three issues with regard to PQ's response. First, they argue that PQ

provided plaintiffs with a list of terminated employees that is inconsistent with the final

termination list. What plaintiffs have failed to inform this court is that PQ has provided plaintiffs

at PQBM 4289-94 and 4297-4302 with a <u>complete</u> list of everyone terminated by PQ from 2000

through 2005 listed <u>both</u> alphabetically and by date and containing their birth dates, termination

dates and reason for termination. Therefore, plaintiffs have <u>everything</u> they are seeking in this

regard.

Next, plaintiffs complain that PQ cited a document which PQ did not produce. Plaintiffs

are correct that PQ's response contained a typographical error. What plaintiffs have failed to

inform the Court is that the information requested <u>was</u> produced to plaintiffs at PQBM 215, not

217.

Finally, plaintiffs complain that PQ has produced a document which "appears to provide

partial responsive information, only as to individuals employed in R & D." Motion to Compel

p. 12. The documents produced by PQ show all the R & D people at the level of Marcus,

Senderov and Wypart who worked on the projects at issue. There may have been some clerical

people, sales people, business unit managers, and other individuals who may have performed

some "work" on an R & D project. To the extent that such information is what plaintiffs are

seeking in this interrogatory, then PQ objects on the grounds that the information requested is

clearly overly broad, unduly burdensome and not reasonably calculated to lead to the discovery

of admissible evidence. The issue in this case for Marcus, Senderov and Wypart is whether the

funding which supported the work they were performing at the time of their termination was eliminated - not whether clerks or sales people may have done some work on those projects. Because PQ has supplied plaintiffs with all relevant information, their Motion to Compel a further response to Wypart Interrogatory No. 13, must be denied.

C.   **Marcus Interrogatory No. 14 - Motion To Compel p. 12**

> Please **identify** all persons assigned to the Exploratory Research Group (whether on a full time, part time, intermittent or temporary basis) since January 1, 2002, and specify for each individual the proportion of their time dedicated to the Exploratory Research Group, and the dates during which they were a part of the Group.

> **RESPONSE:** Defendant incorporates its objection and response to Interrogatory No. 13 as if fully set forth herein. See, e.g., 218-22, 10811-12, 10830-31, 10842-43.

Once again, PQ is at a complete loss to understand the basis for plaintiffs' objection. PQ has identified by Bates Number the documents giving plaintiffs exactly what they requested. *See e.g.* Attachment 6. The documents were prepared by PQ three to five years ago, during the relevant time period. They are the best evidence of what information is available. The plaintiffs try to claim that PQ's response is contradictory by including in their Attachment 16 another document produced by PQ, but which is not even referenced in the response to the interrogatory! That document does not contradict the answer to the interrogatory because it was created for a different purpose than the information sought in the interrogatory. Because PQ would simply take the information in the charts cited to respond to the interrogatory, providing the charts themselves fully satisfied PQ's obligations under Fed. R. Civ. P. 33(d). Therefore, plaintiffs' Motion to Compel a further response to Marcus Interrogatory No. 14 must be denied.

D.   **Marcus Interrogatory No. 8 - Motion To Compel p. 13**

> **Identify** all **Research and Development, Corporate Development or Business Unit Sponsored Projects** at PQ that any employee **terminated** (or laid off) as part of the **2005 Reduction in Force** worked on after January 1, 2004.

**RESPONSE FROM DEFENDANT'S SECOND SUPPLEMENTAL ANSWERS SERVED ON SEPTEMBER 2, 2008:** Defendant objects to this interrogatory on the grounds that the information requested is overly broad, burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent, among other reasons, it seeks information relating to projects that had absolutely no connection to Plaintiffs. Defendant further objects to the interrogatory to the extent that it requests all of the information set forth in "Definitions" section on the grounds that such information is likewise overly burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving those objections, documents describing the projects are being produced in response to Plaintiffs' Document Request. In addition, the projects that were worked on after January 1, 2004 by plaintiffs were: wood polymer composites; PVC heat stabilizer; TSPQ; MMA/Lucite; Nano-A/detergent zeolites. Defendant will also provide information on the four people in R & D who left PQ's employment during the period of the 2005 RIF: Al Behan, John Slobogin, Dick Hinchey and Eleanor Tickner. Behan worked in Zeolyst International ("ZI") using his surface chemistry skills to help evaluate the behavior of solids when trying to determine how they would form into/onto bound products. Behan was also asked to provide some support from time to time on Exploratory Research Group projects. In regard to Slobogin, from the beginning of 2004 until he voluntarily resigned in 2005, he was not assigned to specific projects. Rather, his job required him to administer the Product Specification record-keeping system in compliance with ISO guidelines, upkeep all analytical procedure records and documents, inclusive of helping operations staff when they had questions, and he would also handle shipment of samples to customers. as requested. In regard to Hinchey, in the beginning of 2004, he split his time between ZI and Detergent Zeolist. From mid-2004 until his termination, he was assigned 100% to Detergent Zeolist, although he may have performed some work for ZI. He also did some work on Nano-A. Eleanor Tickner's job required her to perform elemental analysis on all product lines of PQ, insuring that they met specifications, etc.

Eight people employed in R & D left in conjunction with the RIF. PQ's answer to the interrogatory, together with voluminous documentation already provided to plaintiffs, provide them with all relevant information or information reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs protest Defendant's answers on many grounds that were not part of the interrogatory. In addition, the plaintiffs are asking PQ to recreate what was done three to five years ago in exacting detail. That cannot be done. Instead, PQ has provided the plaintiffs with documents prepared during the time period in question showing where everyone was assigned on

10

from 2002 to 2005. The documents are referenced in response to the two preceding

interrogatories. PQ has also provided plaintiffs at Bates No. 4288-94 with documents showing

the names, positions and ages of everyone terminated from 2000 through 2005. Finally, PQ has

provided plaintiffs with hundreds of pages of budget documents for the years in question. To the

extent that plaintiffs want additional financial information, PQ would have to comb through the

same documents it provided to plaintiffs. It is not required to do so under Fed. R. Civ. P. 33(d).

To the extent that they claim they need additional information, such a claim is clearly overly

broad and unduly burdensome and will not lead to the discovery of admissible evidence.

Therefore, plaintiffs' Motion to Compel a further response to Marcus Interrogatory No. 8 must

be denied.

  **E.**  **Senderov Interrogatory No. 14 - Motion To Compel p. 15**

> **Identify** all **Research and Development, Corporate Development or Business
> Unit Sponsored Projects** that the following current or former PQ employees
> have performed work on at any time since January 1, 2004; Bonnie Marcus,
> Roman Wypart, Ernest Senderov, Al Behan, Richard Hinchey, John Slobogin,
> Eleanor Tickner, Phil Connolly, Cindy Connor, Erin Fisher, Yatao Hu, Pam
> Klipstein, Hong-Xin Li, Ed Mysak, Larissa Ding, Jeffrey Fuess, Runbo Li, Ufuk
> Senturk, Kenneth Berg, Bill Breitenbach, MD Lee, Jason Lenox, Neil Miller,
> Barry Schwartz, and Mark Vincent.
>
> **RESPONSE:** Defendant objects to this **Interrogatory** on the grounds that the
> information requested is overly broad, burdensome, irrelevant and not reasonably
> calculated to lead to the discovery of admissible evidence. Without waiving this
> objection, see documents produced in response to Plaintiffs' Document Request.
> Documents setting forth all of the R & D projects during the applicable time
> period are set forth at PQBM 815-37

This interrogatory is an example of a question that is totally overbroad and requests

information that is irrelevant and not reasonably calculated to discovery of admissible evidence.

In essence, it is an attempt to have PQ describe <u>all</u> research done by PQ since January 1, 2004,

regardless of whether it had <u>anything</u> to do with the plaintiffs' work at the time of termination.

Furthermore, it would require PQ to describe projects on which the people identified performed

"work," regardless of when the "work" was performed, regardless of how little "work" was involved, and regardless of what was done (i.e., did it have anything to do with what the plaintiffs were doing at the time of their termination).  Despite the foregoing, PQ identified and produced documents showing all of the work performed by R & D in 2004 and 2005.

Plaintiffs contend that the information requested is relevant because the employees identified (i) were allegedly terminated as part of the RIF, (ii) are employees whom plaintiffs "believe assumed work from the other RIF'd members of R & D," or (iii) are employees who performed work on corporate development projects.  Motion to Compel p. 15.  What is interesting about the foregoing allegations is that PQ has produced the personnel files of all of the foregoing individuals so that plaintiffs could have specifically identified who fell into what category.  They did not do so because their allegations are either misleading or irrelevant.  This can be demonstrated by referencing just one of the people mentioned - Eleanor Tickner.  Ms. Tickner was employed as a research technician, a position requiring far less qualifications and expertise than the positions held by Wypart, Senderov and Marcus.  Furthermore, Tickner voluntarily resigned.  Plaintiffs know this because their firm represented her in negotiating her severance agreement.  There is no relevance whatsoever for providing more information than what PQ has already provided relating to the specific work performed by Tickner.  Most of the other employees mentioned were also either lower level employees, employees employed outside or R & D, or people who worked on different projects than plaintiffs.

PQ has identified the projects worked on by the plaintiffs at the time of their termination. It has identified the people, if any, who assumed any of the plaintiffs' work.  It has also identified the work performed by the four other people in R & D who left as part of the RIF, and who, if anyone, took over their work.  It has identified the funding for the work performed at R & D.  It

has provided documents showing work performed on the projects worked on by the plaintiffs at the time of their termination which were continued, even though the research they had performed was no longer being conducted. The plaintiffs' contention that they need additional information is nothing more than an overly broad and burdensome fishing expedition which ignores PQ's stated reasons for terminating the plaintiffs. Therefore, plaintiffs' Motion to Compel a further response to Senderov Interrogatory No. 14 must be denied.

F.   **Document Request No. 38 - Motion To Compel p. 15**

> All documents created or modified on or after May 1, 2005 that pertain to or refer to work performed on any of the following Research and Development, Corporate Development or Business Unit Sponsored Projects: AG (Silver) Zeolites, Biocide I - Wood Preservation / Borax (Rio Tinto) / Wood Treatment, Biocide II - Wood Preservation / PQ Materials, Biocide Building Materials / PQ Materials, Conditioning, Glass Beads / C & D Dust, Liquid Detergent Additives / Small Particle and Nano-A / Small Crystal A / SPA / Small 4A, Lucite CD / Silica Beads / MMA Catalyst, Nano-A / Nano Composites /Additives / Nano (submicron size) Zeolite A, Next Generation Beads / Specialty Beads / Wide Pore Beads, Olefin Cracking / High Silica / Alumina Ratio Pentasil Zeolites, Polymer Additives / Plastic Additives / Zeolites for Plastics, PVC Additives, Titanium Zeolite for Oxidation Catalysis / TS-PQ / TS -1 / Zeolites With Titanium in The Framework, Titania Silicate / Titanium Catalyst / Titanium Oxidation, Wood Polymer Composites.

> **RESPONSE:** Defendant objects to this Request on the grounds that the documents requested are vague, unintelligible, overly broad, burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, documents which Defendant can reasonably identify relating to projects worked on by Plaintiffs will be produced including documents bates-stamped PQBM 52-55,

Like the foregoing interrogatory, this document request is totally overbroad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence. It would require PQ to not only produce every document regarding all research it has performed since May 1, 2005, but all documents relating to any work whatsoever performed on projects that were once supported by R & D. According to the document request, it does not matter when the work was performed, by whom it was performed, how much or little work was performed, whether it had

13

anything to do with research, or if it had anything whatsoever to do with work plaintiffs were performing at the time of their termination. Based on the foregoing, PQ submits that the request is not a good faith request for potentially relevant evidence, but a clear attempt by plaintiffs to unduly broaden, change and complicate the issues in the case.

PQ has produced documents relating to research and development on projects which plaintiffs were working on at the time of their termination. No other documents are relevant to this case and providing such documents would be unduly burdensome, in addition to being relevant and not leading to the discovery of admissible evidence. Therefore, plaintiffs' Motion to Compel a further response to Document Request No. 38 must be denied.

**G.** **Senderov Interrogatory No. 8 - Motion To Compel p. 20**

> Please describe in detail any **Research and Development, Corporate Development or Business Unit Sponsored Project** involving oxidation catalysis upon which any work has been performed since June 1, 2005.
>
> **RESPONSE:** Defendant objects to this interrogatory on the grounds that the information requested is overly broad burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Zeolyst International is still performing the oxidation analysis work, but it is not work that was performed by the plaintiffs or which involves exploratory research.

This is an example of where the plaintiffs ignore what is relevant to the issues in the case. On page 20 of the Motion to Compel, plaintiffs seek to define the type of research that Senderov was working on, while ignoring the fact that the funding for the projects he was working on was eliminated. The type of research which Senderov was capable of performing is irrelevant to PQ's stated reason for his discharge. If other people in PQ were doing similar work to Senderov on other projects, and that work continued after the RIF, that fact is wholly irrelevant to this case. The issue is whether the reasons stated for Senderov's termination are a pretext for age. Defendant has provided all the documents which it could reasonably locate dealing with any

research being done on projects that previously were worked on by Senderov, Wypart and Marcus at the time of their termination. In fact, it has gone well beyond that limitation and provided documents on those projects even if they had been commercialized so that no further research was being done on them. Therefore, plaintiffs' Motion to Compel a further response to Senderov Interrogatory No. 8 must be denied.

### H.   Wypart Interrogatory No. 10 - Motion To Compel p. 21

> Identify every person that was hired to perform work in Research and Development and/or at PQ's Valley Forge Headquarters since January 1, 2004.

> **RESPONSE:** Defendant objects to this Interrogatory on the grounds that the information requested is overly broad, burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving that objection, see document being produced at bates-stamp PQBM 4295-96, and 11257, which includes all people hired onto the Defendant's payroll, regardless of whether the individual worked with ICD, Potters or ZI.

This request is another example of the plaintiffs trying to improperly broaden this case and raise issues that are wholly irrelevant. The issue is whether the stated reasons for the plaintiffs' discharge were a pretext for age discrimination. That requires an analysis of whether PQ eliminated the funding from the corporate holding company that was supporting Senderov, Wypart and Marcus, and whether Callaghan's office supervisor position was eliminated. The fact that one, two or three years later PQ hired other employees is irrelevant to this case. In this regard, it is undisputed that PQ continued to do some R & D work. Nonetheless, PQ provided the plaintiffs with the names, dates of hire, positions and other information for everyone hired since 2004, even if on a temporary basis (Bates No. PQBM 4286-88). The fact that it may have hired consultants at some time after the RIF who may or may not have performed similar work to plaintiffs is wholly unrelated to the stated reasons for the plaintiffs' discharges. Therefore, plaintiffs' Motion to Compel a further response to Wypart Interrogatory No. 10 must be denied.

**I.     Callaghan Interrogatory No. 14 - Motion To Compel p. 22**

Please **identify** every person **involved in** PQ's decision to **terminate** the employment of any individual identified in Plaintiff Callaghan's Interrogatory #6, specifying, with respect to each "involved" person, which individual or individuals they were **involved in** the decision to **terminate**.

**RESPONSE (From PQ's Second Supplemental Response to this Interrogatory served on plaintiffs on September 2, 2008):** Defendant objects on the grounds that to the information requested is overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, the person(s) involved in terminating the plaintiffs are identified in Defendant's answers to their respective First Set of Interrogatories. John Slobogin and Eleanor Tickner voluntarily resigned. For Al Behan, it was John Lau and Bill Cormier. For Dick Hinchey, it was John Lau. See also response to interrogatory number 13 in Defendant's supplemental responses to Senderov interrogatory number 13. For Valley Forge and Potters, the document attached hereto as Exhibit 1 gives additional information on the people involved. Finally, Mike Boyce was involved in the overall decision to review the organization, which ultimately resulted in the RIF. Kevin Doran responsible for coordinating the overall process.

This interrogatory requested the names of people who were involved in termination decisions concerning employees who were not employed in R & D. While such information is overly broad and irrelevant, the information PQ provided to plaintiffs in its second supplemental response fully responds to this interrogatory. Therefore, plaintiffs' Motion to Compel a further response to Callaghan Interrogatory No. 14 must be denied.

**J.     Wypart Interrogatory No. 15 - Motion To Compel p. 24**

**Identify** every person employed in **Research and Development** and/or at PQ's Valley Forge Headquarters whose position was eliminated as part of the **2005 Reduction in Force**.

**RESPONSE: Defendant incorporates by reference its objection and response to Interrogatory** No. 12. See also PQBM 11258-60.

Interrogatory No. 12 and PQ's response were as follows:

**Identify** every person employed in **Research and Development** and/or at PQ's Valley Forge Headquarters whose employment with PQ **terminated**, voluntarily

16

or involuntarily, during the years 2004 and 2005, and further state in full detail the reason for the person's **termination** of employment.

**RESPONSE:**  Defendant objects to this Interrogatory on the grounds that the information requested is overly broad, burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving that objection, see document being produced at bates-stamp 4289-94.

Even though plaintiffs appear to admit that PQ has provided the names of every employee who were terminated during the RIF, that is not good enough. They now want to know the names of people whose positions were eliminated but were not terminated. First, that does not provide them with any additional relevant information. If someone's position was eliminated and they were assigned another position, that is irrelevant to the issue in this case of whether PQ's stated reason for terminating the plaintiffs was a pretext for age discrimination. Plaintiffs cannot claim that they were discriminated against on the basis of age when some clerk, sales person or manager was transferred to a position for which the plaintiffs were not qualified.

Just as important for the Motion to Compel, the plaintiffs have, once again, failed to inform the Court that PQ has already provided plaintiffs with documents containing all of the information which plaintiffs' have requested. Specifically, PQ has produced at Bates No. 11258-60 the names, ages and relevant information of everyone who changed jobs from 2003 through 2007. In addition, PQ has produced at Bates No. PQBM 4975-87 and 626-44 organization charts from before and after the RIF showing the names and titles of employees. Based on the foregoing, not only should plaintiffs' Motion to Compel a further response to Wypart Interrogatory No. 15 be denied, but sanctions should be imposed on plaintiffs for pursuing a frivolous position.

**K.    Callaghan Interrogatory No. 15 - Motion To Compel p. 25**

Please **identify** each person who assumed any part of the job responsibilities of any person identified in Plaintiff Callaghan's Interrogatory #6 at any time following the **2005 Reduction in Force,** specifying, with respect to each person

17

who assumed job responsibilities, the individual or individuals whose
responsibilities were assumed and the nature of the responsibilities assumed.

**RESPONSE (From PQ's Second Supplemental Response to this
Interrogatory served on plaintiffs on September 1, 2008):** Defendant objects
on the grounds that to the information requested is overly broad, unduly
burdensome, irrelevant and not reasonably calculated to lead to the discovery of
admissible evidence. Without waiving this objection, to the extent that anyone
assumed job responsibilities of the Plaintiffs, those person(s) are identified in
Defendant's answers to their respective First Set of Interrogatories. In addition,
Defendant will provide the information requested on the four other people who
left R & D during the time of the 2005 RIF: John Slobogin, Dick Hinchey, Al
Behan and Eleanor Tickner. With Slobogin, if any of his duties subsequently
needed to be performed, they were performed by his manager, Bob Patterson,
with respect to ISO compliance, management of product specifications, and any
other higher level work performed by Slobogin, and Larrisa Ding, research
chemist, who would have performed day to day analytical work. With Hinchey,
his duties were not reassigned. With Behan, his duties were substantially
eliminated with approximately 25%-30% of his duties being absorbed by his
manager, Phil Connolly. With Tickner, any duties that she would have continued
to perform were absorbed by Runbo Li, a Chemist II.

The parties narrowed their dispute regarding this interrogatory to providing information

on Eleanor Tickner. Plaintiffs claimed that her information should be provided because Tickner

was 64 at the time of the RIF. What plaintiffs failed to inform the Court is that Tickner

voluntarily resigned, and was represented in that process by the same law firm representing the

plaintiffs. Therefore, they know beyond doubt that the information that are demanding about her

is irrelevant and not reasonably calculated to lead the discovery of admissible evidence.

Nonetheless, so as not to waste the Court's time on a minor issue, PQ believes that its second

supplemental response provides all the information requested by plaintiffs in their Motion to

Compel, including information relating to Tickner. Therefore, plaintiffs' Motion to Compel a

further response to Callaghan Interrogatory No. 15 must be denied.

**L.     Document Request No. 10 - Motion To Compel p. 26**

All documents pertaining to any discipline, negative performance evaluation,
warning, or other reprimand (whether formal or informal, written or oral) received
by John Lau, Joe Caruso, Stan Silverman, Colleen Delmonte, Michael Imbriani,

Roslyn Kutchins, Kevin Doran, James Bailey, Neil Miller, Bill Cormier, Bob
Patterson or any employee identified in response to Plaintiff Marcus's
Interrogatory #3, Plaintiff Wypart's Interrogatory #3, Plaintiff Callaghan's
Interrogatory #3 or Plaintiff Senderov's Interrogatory #3.

**RESPONSE:** Defendant objects to this Request on the grounds that the
documents requested are overly broad, burdensome, irrelevant and not reasonably
calculated to lead to the discovery of admissible evidence. Without waiving this
objection, Defendant is unaware of any discipline, negative performance
evaluation, warning, or other reprimand (whether formal or informal, written or
oral) received by Miller, Cormier or Patterson, whose personnel files have been
produced, and is unaware of any discipline against the other named people
relating to EEO issues.

Plaintiffs are requesting disciplinary records relating to numerous PQ managers and

executives, including the current and former CEO of the company. Even if all of these

individuals were "decision-makers," the documents requested are clearly irrelevant. The relative

performance of senior managers and executives who are not similarly situated to the plaintiffs is

totally irrelevant to the stated reason for plaintiffs' discharge. As a compromise, PQ agreed to

search the personnel files of the individuals referenced for any discipline imposed on them

because they discriminated against other employees. Plaintiffs have even challenged that effort

by noting that disciplinary documents may be included in files other than the personnel files. As

officers of the court, counsel for PQ has not and will not hide documents or mislead the

plaintiffs. If any disciplinary documents relating to discrimination existed with regard to the

persons listed, they would be produced.

Plaintiffs seek to justify their fishing expedition by arguing that if one of the enumerated

managers was disciplined for their interactions with another employee who happened to be older,

that would be evidence of discrimination. Motion to Compel p. 19. Not only is such an

argument contrary to the law (the law does not protect older employees from discipline), but it is

so far a field from the reasons stated for the plaintiffs' discharge that it is difficult to imagine it

can be made in good faith. Therefore, plaintiffs' Motion to Compel a further response to

Document Request No. 10 must be denied.

### M.     Document Request No. 11 - Motion To Compel p. 27

Personnel files for the following individuals:  Kenneth Berg, Phil Connolly, Cindy Connor, John Farrer, Erin Fisher, Yatao Hu, Pam Klipstein, Hong-Xin Li, Ed Mysak, Jeffrey Fuess, Ufuk Senturk, MK Lee, Jason Lenox, Neil Miller, Mark Vincent, John Lau, Joe Caruso, Stan Silverman, Colleen Delmonte, Michael Imbriani, Roslyn Kutchins, Kevin Doran, James Bailey, Neil Miller, Bill Cormier, Bob Patterson, and any individual identified in response to Plaintiff Marcus's Interrogatory #3, Plaintiff Wypart's Interrogatory #3, Plaintiff Callaghan's Interrogatory #3 or Plaintiff Senderov's Interrogatory #3, Plaintiff Marcus's Interrogatory #5, Plaintiff Wypart's Interrogatory #5, Plaintiff Callaghan's Interrogatory #5 or Plaintiff Senderov's Interrogatory #5.

**RESPONSE:**  Defendant objects to this Request on the grounds that the documents requested are overly broad, burdensome, irrelevant and not reasonably calculated to lead to the discovery o of admissible evidence.  Without waiving this objection, Defendant will provide copies of the following personnel files from which social security numbers and any health-related information has been redacted:  Kenneth Berg, Phil Connolly, Cindy Connor, John Farrer, Erin Fisher, Yatao Hu, Pam Klipstein, Hong-Xin Li, Ed Mysak, Jeffrey Fuess, Ufuk Senturk, MK Lee, Jason Lenox, Neil Miller, Mark Vincent, Barry Schwartz, Larrisa Ding, Dick Hinchey, John Slobogin, Reginald Thompson, Bill Cormier, Bob Patterson, Dave Cooper, Bjorn Moden, William Brettenbach, Gary Pasqaule, and Runbo Li.

PQ has produced personnel files of 27 employees, even though most of them have

nothing to do with this case whatsoever because they held completely different positions then the

plaintiffs.  PQ has only objected to producing personnel files for managers and executives who

were higher up in the organization than plaintiffs because such people cannot be compared to the

plaintiffs under any circumstances for purposes of this case.  In addition, the background or

performance evaluations of those managers and executives is irrelevant because the

qualifications of higher level executives or their performance evaluations are totally unrelated to

the issues raised in this case.  In regard to the relevancy of any discipline imposed on them, PQ

incorporates its response to the preceding document request (which obviously overlaps with this

one).  In regard to documents showing their positions, plaintiffs have failed to inform the Court,

once again, that PQ has provided substantial documentation on <u>every</u> employee hired or

employed by PQ since 2004, including their ages and positions, and have produced

organizational charts from 2004 through 2007 showing the positions of <u>everyone</u> requested in

this document request. Based on the foregoing, plaintiffs' Motion to Compel a further response

to Document Request No. 11 must be denied.

### N.   Document Request No. 30 - Motion To Compel p. 28

All emails to, from, pertaining to or referencing any of the Plaintiffs (directly or indirectly) since June 1, 2004.

**RESPONSE:** Defendant objects to this Request on the grounds that the documents requested are overly broad, burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds that any e-mails are to or from counsel for defendant which constitute attorney work product or attorney client communication. Without waiving this objection, documents which Defendant can reasonably identify will be produced.

Plaintiffs admit that this document request was so overbroad that they had to limit it in

scope. They now allege that PQ has failed to comply with the more limited request. This is

simply false. PQ has provided all e-mails that it could reasonably locate referencing the

plaintiffs, including doing a search of the server which handled R & D's e-mails (there were no

back up tapes during the applicable period of time for the server which handled the e-mails at

PQ's headquarters in Valley Forge). Because PQ has fully responded to this request, plaintiffs'

Motion to Compel a further response must be denied.

### O.   Callaghan Interrogatory No. 8 and Wypart Interrogatory No. 9 - Motion To Compel P. 29

<u>Callaghan No. 8 provided as follows:</u>

**Identify** every person employed in **Research and Development** and/or at PQ's Valley Forge Headquarters whose job title changed or who was reassigned to a new **Business Unit** as part of the **2005 Reduction in Force**.

**RESPONSE:** Defendant objects on the grounds that to the information requested is unduly burdensome and irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence. Without waiving this objection, see documents being produced at bates stamp PQBM 5426-29 and 11258-60.

Wypart No. 9 provided as follows:

**Identify** every person employed in **Research and Development** and/or at PQ's Valley Forge Headquarters who was transferred to a new **Business Unit** or whose job title has changed since January 1, 2003.

**RESPONSE: Defendant objects to this Interrogatory on the grounds that the information** requested is overly broad, burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving that objection, a document substantially responsive to this request is being produced at bates-number 11258-60.

As the court can see, PQ has been forced to respond to virtually the same question in different sets of interrogatories. Even though not requested in the interrogatories, the plaintiffs sought various codes to help interpret the documents which they were provided by PQ. Specifically, PQ has provided information that tells the plaintiffs the departments to which people were assigned for funding purposes. This is the only information relevant to their request. In addition, PQ has provided plaintiffs with substantial budgetary information which lists funding from the business units - the information which plaintiffs claim to be missing. Notwithstanding the foregoing, PQ will provide plaintiffs with a list of organizational unit numbers. Based on the foregoing, plaintiffs' Motion to Compel a further response to these two interrogatories must be denied.

N.    **General Issues**

Defendant notes that, contrary to Local Rule 26.1, the following arguments raised by plaintiffs do not set forth the interrogatory or document request to which they apply and, therefore, should be denied on that basis. Nonetheless, Defendant will respond to each of the arguments.

1.    Redactions - Motion to Compel P. 31

Without authority, plaintiffs argue that because one portion of a document may be responsive to a discovery request, the entire document must be produced, including sections that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. PQ disagrees with that contention. Nonetheless, as PQ explained to plaintiffs before they filed their Motion to Compel, PQ believes that it has produced full copies of any documents redacted on the grounds of relevancy. PQ will review all documents again, and if there are any remaining documents produced that that contain redactions that are not based on privilege, PQ will produce unredacted copies by September 15, 2008. Therefore, plaintiffs' Motion to Compel on this issue must be denied as moot.

2.    Archived Documents - Motion To Compel P. 33

PQ objects to plaintiffs' counsel subjective, and erroneous, statement of what was communicated between the parties. PQ went through a very time consuming and difficult process in reviewing numerous documents, computer hard drives and servers and has produced thousand of pages of documents in this case, including hundreds of e-mails and documents it obtained by retrieving documents archived on numerous computer hard drives, as well as documents on the server for the R & D facility. The only source which PQ has not been able to search are documents which are not on a particular computer hard drive, but which may have been in existence at one time on the server at PQ's headquarters in Valley Forge, Pennsylvania. No back up tapes exist from the time period in question for that server. Because PQ has produced all the documents it can reasonably locate to which it has not objected, this aspect of plaintiffs' Motion to Compel must be denied.

3.      Potters and Zeolyst International - Motion to Compel P. 34

This part of the Motion to Compel must be denied in its entirely because it is not tied to any particular discovery request, and the specific discovery request will determine what information or documents may be relevant or reasonably likely lead to the discovery of admissible evidence, and what information or document requested is totally irrelevant, overly broad and burdensome. This can be demonstrated by showing what PQ has produced so far:

a.      Names, positions, ages of everyone employed in a research capacity for ZI and Potters.

b.      Everyone hired into or terminated from ZI or Potters since 2004

c.      Everyone who transferred into or out of ZI or Potters from 2000 through 2005.

d.      With regard to the employees identified, PQ has produced, among other things, their ages, positions, salaries in some cases and other information.

What PQ has objected to producing, as set forth above, includes such things as every document on every research project worked on by Potters or ZI since 2004, regardless of whether the plaintiffs had any connection to those projects. Based on the foregoing, PQ submits that it is impossible and inappropriate to address in a vacuum this aspect of the Motion to Compel. Rather, plaintiffs should be required to comply with Local Rule 26.1(b) and set forth which interrogatory or discovery request they contend PQ has failed to properly answer.

4.      Materials Defendant Has Committed to Producing - Motion to Compel P. 35

This is another overly broad and misleading of the positions of the parties. For example, in footnote 41 of the Motion to Compel, it refers to a videotape. PQ has searched for and cannot find the videotape referenced - it is not being withheld. PQ believes it has produced everything it

has agreed to produce that it could reasonably locate after a good faith search for the same.

Furthermore, counsel understands it has a continuing obligation to produce information and

documents that were included in the outstanding discovery requests, and will continue to comply

with that obligation.   It is clearly inappropriate, however, for plaintiffs to make a broad

allegation against a party that has produced over 11,900 pages of documents, responded to 111

document request and 80 separate interrogatories, particularly where the allegation is not tied to

a specific interrogatory or document request, as required by Local Rule 26.1(b).

## III.    CONCLUSION

The issue in this case is simple and straight-forward: were the plaintiffs selected to be

included in the RIF because of their age.  Defendant disagrees with Plaintiffs' arguments on

statistics and purported evidence of discrimination.  Those issues will be addressed t the

summary judgment stage.

The issue presented by the Motion to Compel, is what additional information is relevant

or would likely lead to the discovery of admissible evidence.  As set forth above, in regard to

pretext, plaintiffs must show that the reasons articulated by PQ for the plaintiffs' termination

were a pretext for age discrimination.  The fact that the plaintiffs may have wanted other facts or

factors to be considered is immaterial.  *Kautz v. Met-Pro Corp.*, 412 F. 3d 463, 469 n. 2 ( 3d Cir.

2005), *citing*, *inter alia*, *Ezold v. Wolf, Blcok, Schorr and Solis-Cohen*, 983 F. 2d 509, 523-25

(3d Cir. 1993); *Simpson v. Kay Jewelers*, 142 F. 3d 639, 642 (1998).  PQ has attempted in good

faith to fully respond to plaintiffs' discovery requests.  It has only objected to the extent that

those requests are overly broad, burdensome and/or request information or documentation that is

not reasonably calculated to lead to the discovery of admissible evidence.  Therefore, the Motion

To Compel must be denied.

In the event that the Court grants any part of Plaintiffs' Motion, PQ requests that it be given at least 20 business days to produce documents, not the five days requested in Plaintiffs' proposed Order.  As outlined above, the requested information (with the possible exception of personnel files) require substantial information gathering which cannot be completed in 5 days. The discovery close in this case is December 2, 2008.

Respectfully submitted,

*s/ Elizabeth A. Malloy*        *(EM962)*
Elizabeth A. Malloy, Esq.  (PA ID No. 48297)

BUCHANAN INGERSOLL & ROONEY, P.C.

1835 Market Street, 14th Floor
Philadelphia, PA  19103-8700
215-665-5310
215-665-8760 (fax)
elizabeth.malloy@bipc.com

Peter J. Ennis, Esq.  (PA ID No. 45754)
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA  15219
412-392-1689
412-456-1041 (fax)
peter.ennis@bipc.com

Attorneys for Defendant
PQ Corporation

Dated:  September 2, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of September, 2008, I caused a true and correct copy of the foregoing Defendant's Responses to Plaintiffs' Motion to Compel Production of Documents and responses to Interrogatories to be filed via the Office Court Electronic Document Filing System, and that said Response is available for viewing and downloading from the ECF system. By virtue of this filing, service is complete. I also served a copy of the foregoing Response via regular mail, postage prepaid upon the following:

Scott B. Goldshaw, Esquire
Katie Eyer, Esquire
Salmanson Goldshaw, P.C.
Two Penn Center
1500 J.F.K. Boulevard, Suite 1230
Philadelphia, PA  19102


*Elizabeth A. Malloy*          *(EM962)*
Elizabeth A. Malloy