**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BONNIE MARCUS, et al.                    :
                                         :
        Plaintiffs               :      **CIVIL ACTION NO.:  07-02075**
                                         :
    v.                              :
                                         :
PQ CORPORATION                           :
                                         :
        Defendant                :


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF MARCUS'
MOTION IN LIMINE TO PRECLUDE TESTIMONY
OF DEFENDANT'S ECONOMIC EXPERTS**

## I.    INTRODUCTION

Defendant PQ is expected to call one or more expert witnesses from the Center For

Economic Studies ("CFES") to support the views expressed in the Expert Report of Defendant as

to Plaintiff Bonnie Marcus.  (See Exhibit 1, attached hereto).  This report was produced not as an

affirmative expert report, but rather as a rebuttal report to the Report of Plaintiffs' expert,

Andrew Verzilli.  Mr. Verzilli, like the defendant's experts, is an economist, and as such he

limited his report to economic calculations of lost wages.  The defense experts, however,

predicate their report not only on economic assumptions, but assumptions based on vocational

issues, for which they have no expertise.  Defense experts' unsupported opinions as to Ms.

Marcus's mitigation efforts must be excluded for three independent reasons:

    1)    Defendant never identified its CFES experts as experts on the issue of mitigation,

           an issue on which they have the burden of proof.  Thus, those expert's opinions

           must be limited to true rebuttal testimony to Mr. Verzilli's report;

2)      Defendant's CFES experts in fact have no expertise in the area of mitigation, and

thus are precluded from testifying as to this issue;

3)      Defendant's CFES experts rely on assumptions that are directly contrary to the

legal standards for mitigation and thus are highly likely to mislead the jury.  The

probative value of their testimony on this issue is therefore substantially

outweighed by the likelihood of unfair prejudice.  *See* FRE 403.

As such, Plaintiff Marcus respectfully requests that the Court exclude the testimony of

defendant's experts to the extent that they intend to opine on any of the following topics

contained in their expert report:

1)      Any testimony other than true rebuttal to the report of Plaintiff's Expert,
Mr. Verzilli; and

2)      Any testimony predicated on or relating to the issue of whether Ms. Marcus
should have obtained substitute employment following her termination from PQ
(including, *inter alia*, any testimony predicated on the assumption that Ms.
Marcus should have been able to locate substitute employment within 26 weeks
and/or should have a salary imputed to her of $80,370/year).

## II.   <u>ARGUMENT</u>

### A.    <u>THE DEFENSE EXPERTS ARE REBUTTAL EXPERTS AND CANNOT TESTIFY BEYOND REBUTTAL OF THE VERZILLI REPORT</u>

The Center for Economic Studies Report was designated as a *rebuttal* report to plaintiff's

economic expert, not as an affirmative expert report.  Plaintiff's expert provided economic

information related to plaintiff's lost earnings; he did not opine as to whether plaintiff properly

mitigated or failed to mitigate her damages.

Thus, Defendant's economic experts' report is a rebuttal report, which must be limited to

actually rebutting Mr. Verzilli's analysis, and which cannot bring in new issues on which the

Defendant bears the burden of proof (such as mitigation).  However, only a single page of

Defendant's economic experts' report actually responds to Mr. Verzilli's analysis, rebutting three specific points: (1) Ms. Marcus' work life expectancy; (2) the potential effect of the sale of PQ on front pay; and (3) the alleged failure to take into account employee health care contributions. (Exhibit 1 at page 9). Anything beyond these three specific points is in fact not rebuttal, and should be excluded, since Defendants' failed to identify CFES as an affirmative expert on the issue of mitigation (or on any other issue).

**B.     DEFENSE EXPERTS' OPINIONS AS TO MS. MARCUS'S MITIGATION EFFORTS ARE NOT RELEVANT OR ADMISSIBLE UNDER _DAUBERT_**

Except for the "true rebuttal" described above, the remainder of Defendant's experts' opinions pertain to Ms. Marcus's efforts to find a new job. However, these opinions are entirely inadmissible under Daubert. Because the defense experts lack the requisite expertise to opine as to Ms. Marcus' mitigation efforts and their assumptions do not actually "fit" with (and indeed contradict) the legal standard for mitigation, the opinions do not meet the standard for admissibility under Daubert.

**1.     The Legal Standard for Mitigation**

Plaintiff's mitigation efforts must be evaluated according to the appropriate legal standard.

Defendant has the burden of proving that Ms. Marcus failed to reasonably mitigate her damages. Ford Motor Co. v. EEOC, 458 U.S. 219, 231-32 (1982). In order to meet that burden, defendant must show: (1) that other substantially equivalent positions were available to Ms. Marcus, and (2) that Ms. Marcus did not make reasonable efforts to attempt to secure those positions. See, e.g., Caufield v. Center Area School Dist., 133 Fed Appx. 4, 10-11 (3d Cir.

2005); see also, <u>Clarke v. Frank</u>, 960 F.2d 1146, 1152 (2d Cir. 1992); <u>Gaddy v. Abex Corp.</u>, 884 F.2d 312, 318 (7th Cir. 1989).

As the Third Circuit has held, a position is considered to be "substantially equivalent" *only* where it has "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status..." <u>Caufield</u>, 133 Fed. Appx. At 10-11; <u>see also</u> <u>Booker v. Taylor Milk Co.</u>, 64 F.3d 860, 866 (3d Cir. 1995).  Thus, a Plaintiff cannot be found to have failed to mitigate based on positions that are not "virtually identical" in all material respects to the position that she held with the Defendant.  <u>Caufield</u>, 133 Fed. Appx. At 10-12.

### 2.    The *Daubert* Standard for Expert Testimony

An individual may not testify as an expert if he or she fails to meet the following threshold  requirements for admissibility.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Thus, the proponent of an expert must establish: (1) the expert is qualified; (2) the methodology is reliable; and (3) the testimony "fits" the relevant inquiry in order to assist the trier of fact.  <u>See In re Paoli Railroad Yard PCB Litigation</u>, 35 F.3d 717, 741-43 (3d Cir. 1994) (citing <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 589-94 (1993)).

While the first prong is liberal and provides that "a broad range of knowledge, skills and training qualify an expert," <u>Schneider v. Fried</u>, 320 F.3d 396, 404 (3d Cir. 2003), the

qualifications must be pertinent to the issues in the case.  See In re Unisys Savings Plan Litigation, 173 F.3d 145, 156-57 (3d Cir. 1999).  For this reason, an expert qualified in one field may not render an opinion on a different topic.  See Unisys, 173 F.3d at 156-57.

The second prong requires that expert conclusions be "derived by the scientific method." Daubert, 509 U.S. at 590.  The Court must determine whether the "process or technique the expert used in formulating the opinion is reliable."  Paoli, 35 F.3d at 742 (citing Daubert, 509 U.S. at 589).  The following eight factors guide Daubert's reliability test.

> (1) Whether the method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Paoli, 35 F.3d at 742 n.8.

The third prong, fit, extends the reliability analysis "to each step in an expert's analysis all the way through the step that connects the work of the expert to the particular case."  Paoli, 35 F.3d 743.  The Court must determine whether the expert's conclusions "reliably flow from the facts known to the expert and the methodology used."  Oddi v. Ford Motor Co., 234 F.3d 136, 146 (3d Cir. 2000); Heller v. Shaw Industries, Inc., 167 F.3d 146, 153 (3d Cir. 1999).  A court may exclude the expert opinion if it concludes "that there is simply too great an analytical gap between the data and the opinion proffered."  General Electric v. Joiner, 522 U.S. 136, 146 (1997); Oddi, 234 F.3d at 146.  Where the opinion proffered by an "expert" does not fit the data alleged to support it, the court should preclude the expert from testifying.  See Elcock v. Kmart Corp., 233 F.3d 734, 756 n.13 (3d Cir. 2000).

### 3.   The Opinions of the Defense Experts as to Ms. Marcus's Mitigation Efforts

Defendant's experts' report relies on three forms of mitigation arguments:

1)      An argument that Ms. Marcus's damages should be minimized and/or cut off based on general, national statistics (BLS data) indicating that in 2005, an unemployed individual took an average of 16.5 weeks to find another job, and 82.7% found "*a* job" (not a *comparable* job) within 27 weeks.  (Report at 3).

2)      An argument that Ms. Marcus's damages should be minimized and/or cut off based on general statistics regarding turnover in positions for Chemists and Industrial Production Managers in the Philadelphia metropolitan area. (Report at 3-4).

3)      An argument that a fictional salary should be imputed to Ms. Marcus based on the forgoing general statistics. (Report at 6 et seq.).

All three of these arguments are inadmissible for two independent reasons:

1)      Defendant's experts have no arguable mitigation expertise, and were not identified as mitigation experts (an issue on which Defendant's have the burden of proof);

2)      Defendant's experts' methodologies are irrelevant and highly misleading, insofar as they suggest that Ms. Marcus's damages can be reduced based on a standard that diverges from the legal standard for mitigation.[1]

Each of these issues is addressed in turn below.

---

1.      Defendant's expert's methodology is also not reliable, as evidenced by the fact that Defendant's expert came forward with no less than *5* different estimates of Ms. Marcus's actual back pay losses, including estimates for the very same year that varied by approximately $20,000.

**4.    Defense Experts' Opinions as to Mitigation Are Inadmissible Because They Are Not Qualified To Opine on Mitigation**

Defendant's experts are economic, not vocational experts.  See CVs attached hereto at the end of Exhibit 1.  Thus, they are not qualified to opine on vocational matters.  For this reason alone, Defendant's experts may not, under Daubert, offer an opinion on whether Ms. Marcus properly mitigated, and their extensive opinions as to whether Ms. Marcus's damages should be limited based on factors unrelated to Ms. Marcus's actual damages must be excluded.  See Unisys, 173 F.3d at 156-57.[2]

**5.    Defense Experts' Opinions as to Mitigation Are Inadmissible Because They Are Not Qualified To Opine on Mitigation**

Defendant's experts opinions as to Ms. Marcus's mitigation must independently be excluded because they bear no relationship to the legal standard for mitigation.  As set forth above, under the legal standard for mitigation, Defendant is required to show: (1) that other substantially equivalent positions were available to Ms. Marcus, and (2) that Ms. Marcus did not make reasonable efforts to attempt to secure those positions.  See, e.g., Caufield v. Center Area School Dist., 133 Fed Appx. 4, 10-11 (3d Cir. 2005).  Defendant's experts' opinions do not bear any relationship to either of these issues, and in fact are highly misleading insofar as they suggest

---

2.    Moreover, to the extent that the experts suggest that Ms. Marcus did not reasonably mitigate (either explicitly, or implicitly, by suggesting that Ms. Marcus should have been able to be re-employed within 27 weeks), such testimony is also improper because that determination is for the jury to decide based on all of the evidence and the Court's instructions.  See, e.g., Roniger v. McCall, 2000 U.S. Dist. LEXIS 11999 at *14 (SD.N.Y. 2000), Berk v. Bates Advertising USA, Inc., 1998 U.S. Dist. LEXIS 16090 (S.D.N.Y. 1998).

that Ms. Marcus's damages can be reduced based on generalized statistics or based on positions that are not substantially equivalent to the position she held at PQ.

Notably, none of the information relied on by Defendant's experts remotely suggests that there were actual comparable positions available to Ms. Marcus in the Philadelphia area.  Indeed, Defendant's experts' report does not identify a single job actual job opening for which Ms. Marcus should have applied.

Moreover, to the extent that Defendant's experts' report seeks to imply that positions were available to Ms. Marcus (based on speculative reliance on general data), the data they rely on relate to positions that are <u>clearly not</u> "substantially equivalent" to the position Ms. Marcus held at PQ.  Specifically, Defendant's experts seek to reduce Ms. Marcus's damages based on the purported availability of positions ranging from $67,000 to $93,000 a year, a far lower rate of pay than Ms. Marcus was making at PQ.  Even if there were evidence that such positions were actually available (Defendant's experts rely only on generalized statistics and do not identify any actual positions that were available), Ms. Marcus would not be required to take them, because they are not <u>substantially equivalent</u> to her PQ position.  <u>See</u>, <u>e.g.</u>, <u>Caufield</u>, 133 Fed. Appx. at 10-11; <u>see also</u> <u>Booker v. Taylor Milk Co.</u>, 64 F.3d 860, 866 (3d Cir. 1995).

In sum, should the jury find in favor of Ms. Marcus, its finding of damages based on wage losses must be limited to Ms. Marcus' actual losses (absent a failure to mitigate) or, in the alternative, based on a conclusion that Ms. Marcus <u>actually</u> failed to mitigate based on failures to use reasonable diligence in attempting to secure substantially equivalent employment.  Because the opinion of defense experts are totally unrelated to either of these issues (except for the limited rebuttal to the Verzilli report), they must be excluded.

## CONCLUSION

For the foregoing reasons, Plaintiff Bonnie Marcus respectfully requests that the Court enter an order in the form accompanying her motion excluding the testimony of Defendant's experts to the extent such testimony goes beyond rebuttal and/or is predicated on misleading and unsupported assumptions about Ms. Marcus's mitigation efforts.

Respectfully submitted,

/s/ Katie R. Eyer
Katie R. Eyer - ID. 200756
Scott B. Goldshaw - ID. 85492
SALMANSON GOLDSHAW, P.C.
Two Penn Center
1500 J.F.K. Blvd., Suite 1230
Philadelphia, PA  19102
215-640-0593
215-640-0596 (fax)

Date:  October 27, 2009

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BONNIE MARCUS, et al. | : | |
| | : | |
| Plaintiffs | : | **CIVIL ACTION NO.:  07-02075** |
| | : | |
| v. | : | |
| | : | |
| PQ CORPORATION | : | |
| | : | |
| Defendant | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2009, I caused a true and correct copy of the foregoing *Memorandum of Law in Support of Plaintiff Marcus' Motion in Limine to Preclude Testimony of Defendant's Economic Experts*, to be filed via the Official Court Electronic Document Filing System, and that said document is therefore available for viewing and downloading from the ECF system.  By virtue of this filing, service of the motion upon the following counsel, being Electronic Case Filing Users, is complete upon counsel's receipt of the Court's e-mail notification of the Notice of Electronic Filing:

Elizabeth A. Malloy
Peter J. Ennis
*Counsel for Defendant*

/s/ Katie R. Eyer
Katie R. Eyer