```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                            - - -

BONNIE MARCUS, et al.,        :  CIVIL ACTION NO. 07-2075
         Plaintiffs           :
                              :
         v.                   :  Philadelphia, Pennsylvania
                              :  November 10, 2009
PQ CORPORATION,               :  10:09 o'clock a.m.
         Defendant            :
. . . . . . . . . . . . . . . .

                   JURY TRIAL - DAY 7
             BEFORE THE HONORABLE JOHN P. FULLAM
             UNITED STATES DISTRICT COURT JUDGE

                            - - -

APPEARANCES:

For the Plaintiffs:      SCOTT B. GOLDSHAW, ESQUIRE
                         KATIE R. EYER, ESQUIRE
                         Salmanson Goldshaw, PC
                         Two Penn Center, Suite 1230
                         1500 John F. Kennedy Boulevard
                         Philadelphia, PA   19102

For the Defendant:       PETER ENNIS, ESQUIRE
                         ELIZABETH A. MALLOY, ESQUIRE
                         Buchanan Ingersoll & Rooney PC
                         1835 Market Street, 14th Floor
                         Philadelphia, PA   19103

                            - - -

Audio Operator:          Dennis Taylor

Transcribed by:          Tracey J. Williams, CET

(Proceedings recorded by For the Record Gold digital sound
recording; transcript produced by AAERT-certified
transcriber.)

                            - - -


                 Laws Transcription Service
                   48 W. LaCrosse Avenue
                    Lansdowne, PA 19050
                       (610)623-4178
```

2

1   (The following occurred in open court at 10:09
2  o'clock a.m.:)
3   THE COURT:  Good morning.
4   ALL:  Good morning, your Honor.
5   THE COURT:  Be seated, please.
6   Members of the jury, we now get to the important
7  part of the case, which is your decision.  It's my obligation
8  to instruct you as to what the law is, but you are the people
9  who decide what the facts are; you decide what happened, what
10 didn't happen and so forth.  And nothing which I say in these
11 instructions is intended to express any personal opinion on
12 my part as to what your verdict should be, that decision is
13 entirely within your province and nobody else's.
14   (At this time the Charge of the Court was given to
15 the jury; previously transcribed under separate cover.)
16   THE COURT:  I now commit the case to you for
17 decision.  I'll give you a couple of extra copies of the
18 verdict form.  In case you mess one up, you can always
19 replace it with another one.
20   The parties will agree on what exhibits are to go
21 out to the jury with you.  There has been, as you know, a
22 huge amount of documentary evidence in this case, some of
23 which you might find useful and some of which you might not.
24 The important issues are the ones that I have explained to
25 you and if in order to answer any of those -- or reach a

```
 1   conclusion as to those questions you find it necessary to
 2   review documentary exhibits, they will be there for you to
 3   look at, but you don't have to, as far as I'm concerned,
 4   spend a lot of time reading multi-page reports from the
 5   records of the parties unless you think they're useful.
 6              I now commit the case to you for decision.  I know
 7   it will receive your careful and thoughtful consideration.
 8              And you may take the jury to some quiet and
 9   convenient place.
10              The exhibits will be sent out to you in due course.
11              (Jury out at 10:40 o'clock a.m.)
12              THE COURT:  I will now permit counsel to register
13   their horror at the instructions and protect their position
14   on the record to get another new trial, if need be.
15              MS. EYER:  With respect to the mitigation
16   instruction, your Honor did not instruct that it --
17              THE COURT:  The what?
18              MS. EYER:  With respect to the mitigation
19   instruction --
20              THE COURT:  Right.
21              MS. EYER:  -- your Honor did not instruct that it
22   was the defendant's burden of proof to identify comparable
23   positions.
24              THE COURT:  That's true, I didn't; I forgot.
25              MR. ENNIS:  And, your Honor, you did not instruct on
```

```
 1   the issue of second guessing, the application of but-for in
 2   this case.  There was an emphasis on the plaintiffs' case,
 3   including a reference to people being replaced by someone
 4   younger, that's open-and-shut discrimination.  In this case
 5   and given the fact that there was also a comment about, if
 6   you eliminated funding because of age, that could be evidence
 7   of age discrimination, I think it's very important that the
 8   application of but-for which was proposed in Instruction
 9   Number 6 be given to the jury, because they are now open to
10   second guessing the business judgment, which is not
11   discrimination at all.  And then we want to make clear that
12   on front pay that would be an advisory verdict to be left to
13   your discretion.
14            THE COURT:  I also didn't instruct them that there
15   can be age instruction if the so-called business judgment was
16   exercised on the basis of stereotypical perceptions, which --
17            MR. ENNIS:  And, your Honor, at the same time, as I
18   said at sidebar, we don't believe the evidence in this case
19   is appropriate for the cat's paw instruction that was given.
20            THE COURT:  Fair enough.
21            MR. GOLDSHAW:  I guess by that measure, we should
22   also just state our position that we don't think that
23   defendants have produced sufficient evidence to create a jury
24   verdict --
25            MS. EYER:  Jury issue.
```

1      MR. GOLDSHAW:  -- a jury issue on mitigation.

2      THE COURT:  I am inclined to agree with you.  I
3 thought the witness on mitigation was about as far in left
4 field as I had ever heard, your statistician who was saying
5 that because, on average, unemployed people get new jobs
6 within a certain period of time that that applies in this
7 case, it doesn't make much sense.  Anyway --

8      MR. ENNIS:  Well, your Honor, in that case the issue
9 was did Ms. Marcus take reasonable steps and then, once you
10 apply if she had taken reasonable steps, it was limited to
11 scientific positions in the greater Philadelphia area.

12     THE COURT:  Right.

13     MS. EYER:  And, again, it's the defendants' burden
14 to identify specific available comparable positions and they
15 have not identified a single one.

16     THE COURT:  Well, I think whatever verdict comes in
17 you should all work on settling rather than perpetuating the
18 dispute.  I think I have given each of you enough to hang
19 onto for a new trial, but let's see what happens.

20     Can you agree on the exhibits that you insist on
21 sending out to the jury?

22     MS. EYER:  Yes, I think we've already discussed that
23 in advance.

24     THE COURT:  Well, where are they?

25     MS. EYER:  Ours are here.

```
 1              COUNSEL:  Ours are right here.
 2              MS. EYER:  And also, your Honor, are we going to get
 3    copies of the verdict sheet?  Is it the same identical to the
 4    one that your Honor used last time?
 5              THE COURT:  Oh, I'm sorry.  Yes, it's identical, but
 6    I didn't give them... would you give this to Roz to give to
 7    the jury?  And I have one more copy.  They're the same as I
 8    used last time.
 9              MS. EYER:  Okay.
10              THE COURT:  Give them to counsel.
11              (Discussion held off the record.)
12              THE COURT:  Would you give those to Roz to give to
13    the jury?
14              (Discussion held off the record.)
15              THE COURT:  And then you come back and get the
16    exhibits and we'll send them out.
17              Now we will -- shall we establish a pool on when the
18    verdict will come in?
19              (Laughter.)
20              MS. EYER:  Hopefully sooner than the last time.
21              THE COURT:  I bet they'll get fed again before we
22    get a verdict.
23              MS. MALLOY:  That's always the case, isn't it?
24              THE COURT:  Not always, but often.
25              Okay.  Make sure that Roz gets...
```

```
 1              (Discussion held off the record.)
 2              MR. GOLDSHAW:  Is it somewhere in the Constitution
 3   you're not allowed to have two hung juries in a row, did I
 4   read that once?
 5              THE COURT:  If you had totally inadequate counsel in
 6   both trials, yes.
 7              (Laughter.)
 8              THE COURT:  Recess until we get a verdict.  Okay,
 9   have fun.
10              ALL:  Thank you, your Honor.
11              (Court in recess; 10:45 to 12:06 o'clock p.m.)
12              THE COURT:  Good afternoon.  Be seated, please.
13              We have a question from the jury:  "What are the
14   repercussions if we, the jury, decide that PQ Corporation
15   violated the law willfully?"
16              What's the answer?
17              MS. MALLOY:  We were just talking, your Honor, I
18   don't know.  I mean, I think there's two possible answers;
19   one is that they're the finder of fact on that and what other
20   -- whatever repercussions are for the Court to decide; and
21   the other possible answer is, it allows the Court to award
22   additional damages.  I don't think we tell them that it
23   doubles damages --
24              THE COURT:  Well, what is the law on that subject?
25              MS. MALLOY:  What the law is on the willful?
```

8

1            THE COURT:  Yes.
2            MS. MALLOY:  It allows the Court to double the back
3   pay.
4            THE COURT:  And is the Court required to?
5            MS. MALLOY:  I believe so, yes.
6            MR. GOLDSHAW:  I agree with the statement of the
7   law, but, your Honor, honestly, I don't know whether it is
8   correct to advise the jury that that is the legal
9   repercussion of answering the question or not.  And my
10  primary concern is, obviously I -- if we're not supposed to
11  let the jury know that's the repercussion, I don't want them
12  to know; if we are, we are.  I would frankly -- I'm most
13  concerned with getting it right and, if I can make a call
14  back to my office, perhaps my partner knows the answer.  I
15  don't know if your Honor would be open to that, but I don't
16  want to guess --
17           THE COURT:  You want to go out and make a phone
18  call?
19           MR. GOLDSHAW:  I'm sorry?
20           THE COURT:  You want to go make a phone call, did
21  you say?
22           MR. GOLDSHAW:  Yes.  My partner might be able to
23  look up to know whether it's proper to instruct the jury as
24  to the repercussions of them answering the question
25  correctly.  I think --

```
 1            MS. EYER:  I have the Third Circuit model
 2   instructions right here.
 3            THE COURT:  It's proper to answer their question,
 4   that's for sure.
 5            MR. GOLDSHAW:  Well, I say that because, for example
 6   in the Title VII context, the rules specifically state that
 7   the jury shall not be informed of the caps to damages, which
 8   is what --
 9            MS. MALLOY:  That's a different question.
10            MR. GOLDSHAW:  -- which is a different question, but
11   it's caused me to doubt whether that could -- a similar
12   concept could apply.  But it looks as though we have a copy
13   of the model instructions that might --
14            MS. EYER:  We do.
15            MR. GOLDSHAW:  -- shed some guidance on it.
16            (Pause.)
17            MS. EYER:  There's the model instruction --
18            MS. MALLOY:  Could I take a look?
19            MS. EYER:  Yes, I'll get -- I've got --
20            MS. MALLOY:  Okay.
21            MS. EYER:  -- an additional copy, but let me hand
22   this one up to the Judge.  That's from the Third Circuit
23   model instructions.
24            THE COURT:  From the Third Circuit, what do they
25   know?
```

```
 1              (Laughter.)
 2              (Discussion held off the record.)
 3              THE COURT:  "If you find that the defendant
 4  willfully violated the law, then you must award the plaintiff
 5  double the amount of damages for lost wages and benefits you
 6  have found."
 7              I didn't tell them that, did I?
 8              MS. EYER:  So, it looks like under the Third Circuit
 9  model instruction they do instruct on that.
10              MR. GOLDSHAW:  Yes, I think -- if I may, your Honor?
11              THE COURT:  Yes.
12              MR. GOLDSHAW:  I am convinced from reading the model
13  instructions that it is appropriate, if your Honor chooses,
14  to tell them that the consequences of answering that question
15  yes is that it will double the back pay award.
16              THE COURT:  Right.
17              MR. GOLDSHAW:  As a matter of law, that would happen
18  anyway.  So, it's not actually -- it's not important for the
19  jury to know that in order to do their job to answer the
20  facts correctly, but I --
21              THE COURT:  Well, they're going to get told.
22              MR. GOLDSHAW:  -- I also don't oppose them being
23  informed that that's the consequences.
24              THE COURT:  I plan to follow, in essence, the model
25  charge.
```

```
 1              MS. MALLOY:  I agree with that.
 2              THE COURT:  Bring in the jury.  Have they been fed
 3   yet?
 4              THE DEPUTY CLERK:  Not until 12:30.
 5              THE COURT:  Pardon?
 6              THE DEPUTY CLERK:  Not until 12:30.
 7              THE COURT:  But lunches have been ordered?
 8              THE DEPUTY CLERK:  Yes.
 9              THE COURT:  Okay.
10              (Jury in at 12:11 o'clock p.m.)
11              THE COURT:  Good afternoon.  Be seated, please.
12              I'll note for the record that you sent in the
13   following question:  "What are the repercussions if we, the
14   jury, decide that PQ Corporation violated the law willfully?"
15   It's something I should have made clear before, I'm glad you
16   wrote this -- sent in this question.
17              Under the law, if the jury finds that the violation
18   was willful, as I have previously instructed you, that has
19   the effect of the Court would then double the amount of
20   damages for back pay.  So that, for example, if the jury
21   answered the question, yes, they did violate the statute and
22   the damages were $700,000 or $70,000, and if you answered the
23   willfully question yes, then I would double the amount of
24   damages for back pay only, it doesn't apply to the other
25   elements of damage.
```

12

1       Does that answer your question?  Okay.
2              THE JURY:  Yes, your Honor.
3              THE COURT:  Thank you.  You may now return to the
4  jury room where I understand you're going to be fed a
5  delicious lunch in due course.
6              (Jury out at 12:12 o'clock p.m.)
7              THE COURT:  I am prepared to assume that the
8  mathematical task of multiplying by two can be performed by
9  the Court as well as by the jury, if it ever comes to that,
10 which I doubt.
11             Okay.  Recess until -- well, I have a hearing at
12 1:30, but we won't take a verdict probably -- they don't get
13 fed until 12:30, do they?  I think we can safely assume that
14 you can stay away until 1:45.
15             MS. MALLOY:  Thank you, your Honor.
16             THE COURT:  Have a nice lunch.
17             MS. EYER:  Thank you, your Honor.
18             MR. ENNIS:  Thank you.
19             (Court in recess; 12:13 to 1:53 o'clock p.m.)
20             THE COURT:  It's still not too late to settle it.
21             (Pause.)
22             THE COURT:  You can sit down and rest, if you want
23 to.  I don't know what's happening.
24             (Jury in at 1:54 o'clock p.m.)
25             THE COURT:  Good afternoon.  I heard a wild rumor

13

1  that you've reached a verdict; is that correct?
2       THE JURY:  Yes, your Honor.
3       THE COURT:  Can you hand the verdict slip to this
4  young lady?
5       (Pause.)
6       THE COURT:  I'm going to read the verdict slip to
7  you and ask if you all agree on these answers.
8       As to Question Number 1, "As to each plaintiff,
9  state whether you find by a preponderance of the evidence
10 that age was a but-for cause of PQ's decision to terminate
11 the employment of Bonnie Marcus," you say yes, "Roman
12 Wypart," you say yes.
13      Do you all agree on those answers?
14      THE JURY:  Yes.
15      THE COURT:  Then the second question, "As to each
16 plaintiff, state the amount of damages you award in the
17 following categories:  Bonnie Marcus, back pay and benefits,
18 $667,903; front pay and benefits, $670,903; emotional
19 distress, $1,500,000," for a grand total of $2,835,806.
20      Do you all agree on those answers?
21      THE JURY:  Yes.
22      THE COURT:  And "Roman Wypart, back pay and
23 benefits, $189,990; front pay and benefits, $376,646;
24 emotional distress, $2 million," and a total of $2,566,636.
25      Do you all agree on those answers?

14

1        THE JURY:  Yes.
2        THE COURT:  And, "If you answered Question Number 1
3  yes as to any plaintiff, state whether you find that PQ
4  Corporation violated the law willfully," and as to both
5  plaintiffs you say, "Yes."
6        Do you all agree on those answers?
7        THE JURY:  Yes.
8        THE COURT:  All right.  That's what you have -- the
9  jury has spoken.  Thank you very -- you may be seated, if you
10 want, but you're going to leave and go home.  The fact that
11 you have served in this case this week means that you can't
12 be required to serve on a jury in this Court for at least two
13 more years, but if the computer strikes again, come back to
14 see us.
15       Thank you very much for your services.  You are now
16 free to talk to the lawyers about it or anybody else about
17 it, if you want to, but you're not required to.  Okay?  See
18 you next time.
19       MR. ENNIS:  Thank you all for your service and, if
20 you are interested in talking, it's how I learn how to do my
21 job better if you have feedback, and you've certainly spent
22 enough time here and you're not required to do it --
23       THE COURT:  The jury is free not to talk to you,
24 they don't have to listen to you either.
25       (Laughter.)

| | |
|---|---|
| 1 | MR. ENNIS:  Okay.  Thank you all. |
| 2 | (Jury excused at 1:57 o'clock p.m.) |
| 3 | THE COURT:  Are you going to file for bankruptcy |
| 4 | immediately? |
| 5 | We will entertain motions with respect to how these |
| 6 | answers get translated into a judgment, but the jury has |
| 7 | spoken and we'll see what happens.  The point -- well, you |
| 8 | make post-trial motions and the issue as to whether you can |
| 9 | translate these generous awards for back pay and benefits, |
| 10 | whether they have to be doubled or not, is something which we |
| 11 | might want to consider. |
| 12 | File post-trial motions.  Okay? |
| 13 | MS. EYER:  Thank you, your Honor. |
| 14 | MS. MALLOY:  Yes, your Honor. |
| 15 | MR. GOLDSHAW:  Thank you, your Honor. |
| 16 | THE COURT:  Recess until further notice. |
| 17 | (Court adjourned at 1:58 o'clock p.m.) |
| 18 | * * * |

<u>CERTIFICATION</u>

I hereby certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


Geraldine C. Laws, CET                Dated 12/14/09
Laws Transcription Service