IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BONNIE MARCUS, *et al.* : CIVIL ACTION
:
v. :
:
PQ CORPORATION : NO. 07-2075

MEMORANDUM

Fullam, Sr. J. February 17, 2011

After their employment was terminated as part of a reduction-in-force("RIF"), four plaintiffs filed suit against their former employer, PQ Corporation, alleging that they were selected because of their age in violation of state and federal law. The case was tried twice. At the first trial, the jury decided in favor of the defendant and against one plaintiff, Mary Ellen Callaghan (who was the office manager while the other plaintiffs were all research scientists), but could not reach a verdict with regard to the other plaintiffs. A second plaintiff, Ernest Senderov, settled with the defendant before the second trial. At the second trial, the jury ruled in favor of the remaining plaintiffs, Bonnie Marcus and Roman Wypart, and against the defendant, and awarded considerable damages for front-pay, back pay, and emotional distress. Post-trial motions were filed by both the plaintiffs and the defendant and are addressed in this memorandum; all further references to the plaintiffs are to Ms. Marcus and Mr. Wypart.

## Motions as to Liability

The defendant argues that no reasonable jury could have found in favor of the plaintiffs because the plaintiffs did not establish that similarly situated workers who were sufficiently younger were treated more favorably or that the plaintiffs were terminated because of their age.  I disagree.  The RIF was implemented in May of 2005, and a total of 29 employees lost their jobs, including Ms. Marcus, who was 60 years old at the time (with 11 years at PQ), and Mr. Wypart, who was age 56 (with 7 years at PQ).  Both plaintiffs worked as research chemists.  At trial the plaintiffs presented evidence from which the jury reasonably could conclude that only four of the 14 employees in the plaintiffs' department lost their jobs; that the selected four were all over the age of 55; and that significantly younger employees (including Erin Fisher (age 35), Phil Connolly (age 47), Pam Klipstein (age 43) and Ed Myszak (age 54, six years younger than Ms. Marcus)) took over the bulk of the duties previously performed by the plaintiffs.  The plaintiffs also produced evidence casting doubt on the defendant's proffered principal reason for the terminations:  that funding ended for the projects on which plaintiffs worked.  The plaintiffs' exhibits included documents supporting their claim that at least some of the projects did continue after the RIF, that the plaintiffs were selected for termination before final decisions

were made as to which projects would continue, and that significantly younger employees were retained despite funding for their positions coming from the same source. When viewed in the light most favorable to the plaintiffs, the evidence supports the verdict that age was a but-for factor in the plaintiffs' termination, and that the verdict was not contrary to the great weight of the evidence. I am satisfied that the finding of liability should not be disturbed.

In the same vein, I am not inclined to disturb the jury's finding that the defendant's actions were willful. The evidence adduced by the plaintiffs, which the jury was entitled to credit, suggested that the defendant was well aware of the ages of the employees selected for termination or retention and consistently ended the employment of the older employees. This satisfies the requirement of a knowing violation of the statute.

The defendant also argues that legal error in the Court's charge to the jury requires a new trial (or two new trials, as the defendant argues that liability and damages phases should have been tried separately, an argument that I reject as unwarranted in this case). I am satisfied that the jury charge on the whole fairly instructed the jury as to the relevant law. The jury was instructed that the plaintiffs had to prove that their age was a decisive factor or a "but for" cause in the termination of their employment, and that "the defendant had a

right to hire and fire its employees whenever they wanted to, as long as they didn't do it because of age." I am not persuaded that a separate charge on the business-judgment rule would have been appropriate in this case, where the plaintiffs took the position that the defendant's articulated reasons for selecting the plaintiffs were not worthy of belief.

The defendant also objects to what it refers to as a "cat's paw" instruction, where I instructed the jury that:

> it is the position of the plaintiffs that an additional reason for believing that there was age discrimination in this case, you have the evidence that a couple of these employees, other employees, had made discriminatory remarks on other occasions, or had acted to discriminate on the basis of age as to other employees, and it is the plaintiffs' position that those, one or more of those persons were involved in the chain of decisions which led to the decision to discriminate in this case. Obviously, if you conclude that an employee who's had a role in the final decision to terminate the plaintiffs, was shown to have been inclined to discriminate on the basis of age, that would be an important factor to consider. It is the position of the defendant[], No. 1, that the alleged discrimination on earlier occasions was rather trivial and happened so long before, that it doesn't say much about the attitude of the persons in 2005, and primarily it's also the position of the defendant that the evidence establishes very clearly that these people who had previously discriminated were not involved in the decision which led to the -- any of the decisions which led to the discharge of these plaintiffs. I'll leave that to you to sort out.

Whether or not this was a "cat's paw" instruction, see Root v. Keystone Helicopter Corp., 2011 WL 144925 (E.D. Pa. Jan. 18, 2011) (defining a "cat's paw" theory as one where a biased subordinate without decision-making authority uses the formal

4

decision maker as a dupe to trigger a discriminatory action), I believe that it accurately summarized the positions of the parties and was relevant for the jury to consider as part of whether age discrimination was the reason for the plaintiffs' termination.  Similarly, the defendant's objection to the admission of evidence of what it refers to as "stray remarks" as to age discrimination does not provide a basis for disturbing the finding of liability, and I am convinced that it was proper to exclude any evidence of the first trial, which would only have led to confusion and speculation by the second jury.  In sum, upon consideration of all of the arguments put forth by the defendant, I am unpersuaded that the jury's verdict should be disturbed.

## Motions as to Damages

The plaintiffs have filed motions to amend the order of judgment to include liquidated damages (pursuant to the jury's finding of wilfulness), and to include pre-judgment and post-judgment interest and to account for negative tax consequences.  The defendants have filed motions for remittitur or new trial and to set aside the judgment to eliminate the jury's front-pay award.  The jury found the damages to be as follows:

As to plaintiff Bonnie Marcus:

| | | |
|---|---|---|
| 1) | Back-Pay and Benefits | $ 667,903.00 |
| 2) | Front-Pay and Benefits | $ 667,903.00 |
| 3) | Emotional Distress | <u>$1,500,000.00</u> |
| 4) | Total: | $2,835,806.00 |

As to plaintiff Roman Wypart:

| | | |
|---|---|---|
| 1) | Back-Pay and Benefits | $ 189,990.00 |
| 2) | Front-Pay and Benefits | $ 376,646.00 |
| 3) | Emotional Distress | <u>$2,000,000.00</u> |
| 4) | Total: | $2,566,636.00 |

The defendant does not contest the amount of back-pay and benefits awarded to Mr. Wypart, and that award will not be disturbed. With regard to Ms. Marcus, the jury accepted the plaintiff's evidence as to the amount of lost wages. It was the defendant's burden to establish that Ms. Marcus failed to mitigate her damages and the expert witness on mitigation did not address Ms. Marcus's specific situation, instead essentially testifying as to the average time for those unemployed to obtain new positions. It was within the province of the jury to decide whether Ms. Marcus took reasonable steps to secure new employment, and they apparently found in her favor.

With regard to the award of front-pay and benefits, the parties disagree as to the proper role of the jury. The defendant takes the position that front-pay is an equitable remedy properly entrusted to the Court, and that the jury's award was in an advisory capacity that the Court should disregard or

substantially reduce.  The plaintiffs argue that only the question of whether reinstatement is available as an equitable remedy is for the Court; if reinstatement is not feasible (and no one in this case argues that it is), then the amount of front-pay and benefits is for the jury to determine.  The law of the Third Circuit is not entirely clear on this issue, but either way I am not inclined to change the amount awarded; although generous, it is not unduly so.  I also note in general with regard to the economic damages that the jury seems to have followed the evidence laid out by the plaintiffs during trial and used that as the basis for the awards and the defendant had the opportunity to present its own evidence for the jury to consider.  However, the same cannot be said of the awards for emotional distress.

Especially in light of the substantial economic damages awarded, the jury's award of a total of $3.5 million for non-economic damages shocks the conscience of the Court.  The plaintiffs movingly testified as to the devastating effect of losing their employment on the basis of age, and the jury may have been particularly affected by Mr. Wypart's testimony with regard to the significant changes in his standard of living, but most of these damages are made up for by the awards for back- and front-pay.  On balance, I conclude that the maximum permissible award for emotional distress damages that the record would support is $50,000 for Ms. Marcus and $100,000 for Mr. Wypart.

7

Accordingly, the defendant's motion for a new trial will be granted unless, within 30 days, the plaintiffs accept a reduction in the award to this amount.

Finally, I find it unnecessary to amend the judgment to account for pre-judgment interest or negative tax consequences as any increased award would represent a windfall to the plaintiffs, particularly in light of the fact that the jury's finding of willfulness will double the award of back-pay and benefits. Post-judgment interest will be awarded at the rate provided for in 28 U.S.C. § 1961.

An order will be entered.

BY THE COURT:


/s/ John P. Fullam
John P. Fullam,   Sr. J.